### 18469.  GUARANTY LIFE INSURANCE CO. *v.* PRIMO.

1. A new trial is not required because of the admission of the testimony as to the age of the insured of which complaint is made in the first ground of the amendment to the motion for a new trial.
2. Neither excerpt from the charge, of which complaint is made, shows an error which requires that the case be tried again.
3. All contested issues of fact having been passed upon by the jury, and there being evidence to support the verdict, which has the approval of the judge who tried the case, this court can not interfere.

DECIDED DECEMBER 13, 1927.

Action on life policy; from city court of Albany—Judge Clayton Jones.  August 29, 1927.

G. E. Primo sued the Guaranty Life Insurance Company, alleging that it was indebted to him as beneficiary on a policy issued to Jim Jones; that Jones died on or about July 27, 1926; that the plaintiff promptly furnished to the insurance company legal proofs of his death, but that after repeated demands for payment the company, without cause or legal reason, refused to pay the claim; and that "the refusal of the said company is vexatious, unreasonable, unnecessary, without stating in writing sufficient grounds for refusal, and defendant herein further persists in its refusal and failure to return the insurance policy and the proofs submitted by your petitioner, and this refusal to pay has continued for more than sixty days."  The plaintiff prayed for damages and attorney's fees.  The defendant denied liability.  It expressly denied bad faith and alleged that Primo had no insurable interest in the life of Jones; that Primo was acting for himself and at his own expense; and that Primo and Jones were both acting in bad faith; that Primo at his own expense secured the insurance on Jim Jones, and this "was simply a scheme and a device by way of cover for a wager policy, and said contract so entered into was and is a wagering and speculative one and contrary to public policy and the laws of the State of Georgia, and was and is void."  The defendant further insisted that the plaintiff was "not entitled to recover the sum sued for, in that said insured represented in his written application that he was 40

Appeal and Error, 3 C. J. p. 818, n. 23; p. 819, n. 26; 4 C. J. p. 858, n. 3; p. 859, n. 7.

Evidence, 22 C. J. p. 528, n. 25.

Life Insurance, 37 C. J. p. 651, n. 67.

Trial, 38 Cyc. p. 1376, n. 99; p. 1778, n. 73.

years of age, when in truth and in fact said insured, Jim Jones, at the time of the making of said application, to wit, on June 5, 1925, was at least 60 years of age." The trial resulted in a verdict for the plaintiff for the amount of the policy. The insurance company's motion for a new trial, was overruled, and it excepted.

*S. B. Lippitt*, for plaintiff in error. *W. H. Burt*, contra.

BLOODWORTH, J. (After stating the foregoing facts.)

In the brief of counsel for plaintiff in error he expressly abandoned his assignments of error based upon his exceptions pendente lite.

1. In the first special ground of the motion for a new trial error is assigned on the admission of the following evidence:

(*a*) Testimony of the plaintiff: "I am not related to Jim Jones. He is not a member of my church. I do not know his age, but he said he was forty years old." (*b*) Also: "Jim Jones told me· that he wanted me to pay the premiums when he could not keep them up. I had not seen Jim Jones for about two or three weeks until I found that he had died, when I immediately went and secured his body from · Captain Pinson and delivered it to the Elliott Undertaking Company for burial, as Jim Jones had told me that he wanted me to look after him when he died and see that he was given proper attention, and· this was said at the time he gave me the insurance policy." (*c*) Testimony of James Grant: "He [Jim Jones, the deceased] said also that he was about 40 years of age. When I asked him the question as to his family, he said he had none."

The objections urged to the foregoing evidence were that it was "hearsay, incompetent, irrelevant, and immaterial." A portion of the evidence in each case was not subject to the objection that it was hearsay. Under the ruling in *Norris* ·v. *Lynch*, 26 *Ga. App.* 389 (106 S. E. 801), which is supported by a number of citations, unless the illegal portion of the evidence objected to is specified, the whole will be admitted.

(*d*) Sandy Turner swore: "Jim Jones [the deceased insured] looked prematurely old and was thin." This evidence was objected to as "a conclusion and opinion of the witness." This evidence was not a conclusion, but a statement of facts, and was properly allowed to go to the jury. *Dixie Manufacturing Co.* v. *Ricks*, 28 *Ga. App.* 160 (110 S. E. 454). Sandy Turner swore also that

when Jim Jones had a beard and his hair was long he looked about 45 years old, and that after he was shaved he looked about 40 years old. The objection to a portion of the foregoing evidence (in *a, b, c*), that it was "incompetent, irrelevant and immaterial," is too general to present anything for consideration by this court. *Gordon* v. *Gilmore,* 141 *Ga.* 347 (2a.) (80 S. E. 1007); *Richardson* v. *State,* 141 *Ga.* 782 (2) (82 S. E. 134); *Hayes* v. *State,* 36 *Ga. App.* 668, (1e) (137 S. E. 860).

2. The court charged the jury as follows: "The public policy which prevents one person from insuring the life of another, in whose life he has no insurable interest, is based upon the presumption that temptation would be held out to the one taking out the policy to hasten by improper means the time when he should receive the amount of insurance named in the policy, and that such temptation would be as strong in a case where the assured took out a policy upon his own life for the benefit of one having no interest therein and was to keep up the premiums or assessments as it would be where the premiums or assessments were to be paid by the beneficiary. The testimony, therefore, in this case, with reference to the beneficiary having paid certain premiums after the original policy was taken out, does not alter the rule as to the right of the insured to make any one a beneficiary, provided it not be done by way of a cover for a wager policy." This excerpt therefrom, when read in connection with the remainder of the charge and in the light of the evidence, is not erroneous for any reason alleged.

It is urged that the judge erred in reading from the petition as follows: "that the refusal of said company is vexatious, unreasonable, unnecessary, without stating in writing sufficient grounds for refusal, and defendant herein further persists in its refusal and failure to return the insurance policy and the proof submitted by your petitioner, and this refusal to pay has continued for more than sixty days." This portion of the petition had reference to the right of the plaintiff to recover attorney's fees on certain conditions, and as the judge did not charge them that they could find damages or attorney's fees, and the jury found neither, the reading of this part of the petition could not have been harmful to the defendant.

3. A new trial should not be granted because of the conflicting

testimony as to the age of Jim Jones, or that the policy resulted from a conspiracy between Jones and Primo, or was a wagering contract. The insurance company introduced the application for the policy, and in that the age of Jones was stated as 40. James Grant, who took the application for the insurance company, was allowed to swear without objection that "Jim Jones stated his age was 40 years old. He looked to be about 40 years old." Dr. E. S. Portis swore that he did not know how old Jim Jones was, but that "in his opinion he was about 40 years of age." The question as to whether the age of the deceased was knowingly and wilfully misstated with intent to deceive and defraud the insurance company was submitted to the jury, as was also the question as to whether the policy was taken out as the result of a conspiracy between Jones and Primo (it being alleged that the latter had no insurable interest in Jones), and whether or not this was a scheme or device to cover a wagering policy and a speculative contract. All these questions were, upon conflicting testimony, submitted to the jury, and their verdict was against the foregoing contentions of the insurance company. There is evidence to support the verdict rendered, and it is approved by the judge who tried the case.

*Judgment affirmed. Broyles, C. J., and Luke, J., concur.*