### 25676. INTERSTATE LIFE & ACCIDENT CO v. STONECYPHER.

498

DECIDED NOVEMBER 7, 1936.

*Owen & Gross,* for plaintiff in error.

*B. F. Davis, Wheeler & Kenyon,* contra.

SUTTON, J.   John E. Stonecypher filed suit against the Interstate Life & Accident Company in which he alleged that on July 12, 1934, the defendant solicited and obtained an application for insurance on the life of his daughter, Mrs. Maye Patterson, in the amount of $345, its agent collecting from petitioner at the time, $3 as the payment of the first twelve weekly premiums and issuing the defendant's regular receipt in which was stated the purpose of the payment, a copy of which receipt was attached to the petition as exhibit A and made a part thereof, and reading: "The Interstate Life & Accident Co. of Chattanooga, Tenn.   Incorporated under the laws of the State of Tennessee.   Received of John E. Stonecypher $3.00 for a deposit of —— weekly premiums on account of application for insurance in the Interstate Life & Accident Company made this date.   If the application is accepted and a policy issued, this sum will be applied toward payment of the premiums thereon.   If application is rejected, the amount will be returned to the applicant.   No obligation is incurred by said company by reason of this deposit, unless and until a policy is issued upon said application, and unless at the date of delivery of said policy the life proposed is alive and in sound health.   Except that if the life proposed is now in sound health, and the amount

paid by the applicant at the time the application is written is not less than four weekly premiums, and this receipt, detached from the original application, covering said payments, is surrendered to the company, the company agrees, if the application is approved by the home office in Chattanooga, Tennessee, that should death occur prior to the delivery of this policy, it will nevertheless pay such amounts as would have been due under the policy if issued. No obligation is assumed by the company unless the application is so approved and the life proposed is now in sound health. G. A. Brown, Agent." It was further alleged that at the time of the application Maye Patterson was in sound health; that the application was approved by the home office of the defendant in Chattanooga, Tennessee, and on July 23, 1934, it issued its policy No. F2486946 on the said life in the amount of $345, naming John E. Patterson as the beneficiary therein, a copy of the policy being attached to the petition as exhibit B and made a part thereof; that the naming of John E. Patterson as the beneficiary was a clerical mistake, the intention of all parties being that the plaintiff should be the beneficiary; that on July 26, 1934, Maye Patterson died, and subsequently the said policy was delivered to the plaintiff, who was informed that payment thereof would be made as soon as proper proof of loss was furnished; that on August 4, 1934, proper proof of the death of the insured was submitted to the defendant, who obtained from the plaintiff the original receipt for $3, the same, detached from the original application, being surrendered with the understanding and definite statement by the defendant that the amount of the policy would be paid in a few days; that thereafter, from time to time, the plaintiff made written demands on the defendant for payment, offering to furnish any further information desired; that on September 20, 1934, the defendant declined to make payment; that subsequently the plaintiff, through his attorneys, made additional demands for payment, the last being on October 4, 1934, but the defendant still refused to make payment; that, acting upon the promise of defendant, when the original receipt was surrendered, that it would make payment within a few days, the plantiff incurred substantial indebtedness in placing monuments and protectors at the grave of the insured, and for that reason the defendant is estopped to deny the indebtedness to the plaintiff; that the defendant accepted the

proof of death of the insured as satisfactory, waived further proof or information; that its refusal to make payment was and is in bad faith; that such conduct has caused the plaintiff to go to the expense of employing counsel and making expensive investigations with reference to his claim, and that by reason thereof the defendant is indebted to him in the further sum of 25 per cent. as damages on the claim and $250 as attorney's fees. The prayers were that paragraph 6 of the policy be so reformed as to substitute the name of the plaintiff as beneficiary instead of that of John E. Patterson; that the plaintiff have judgment against the defendant for $345, plus interest from August 4, 1934, with 25 per cent. damages and $250 attorney's fees.

The defendant filed an answer admitting that the insurance application was submitted to it, and was approved at its home office; that the insured died on July 26, 1934; that proof of death was submitted on August 4, 1934; that it received from the plaintiff's attorneys letters demanding payment under the policy, and that it refused to pay. It denied that it was acting in bad faith; denied that it issued to the plaintiff the $3 receipt in question, or that it ever received such sum; denied that the insured was in sound health at the time of her application; denied that the policy was delivered to the plaintiff and that he was informed that the policy would be paid as soon as proper proof of death be made; denied that it was indebted to the plaintiff, or that it accepted the premium and was estopped to deny liability. For further answer the defendant alleged that the policy was void, because the applicant wilfully concealed material facts in connection with the application for insurance; that the insured died of pulmonary embolism, a disease that could not possibly have formed since the date of the application; that the policy is void because it provides that "This policy shall not take effect unless on the date and delivery hereof the insured is alive and in sound health;" that on the date of the delivery of the policy and seven days before its issuance she was taken to a hospital, suffering from the disease from which she died, and could not possibly have been in sound health; that under the terms of the policy "No person except the president, secretary or assistant secretary has the power to modify, or, in the event of lapse, to reinstate this policy or to extend the time of payment of a premium. No agent has power on behalf of

the company to waive any forfeiture, or to bind the company by making any promise, or by making or receiving any representations or information." The defendant alleged that it was not indebted to the plaintiff in excess of the premiums paid; that such amount had been tendered before the institution of the suit; and that it makes a continuing offer of this amount and pays it into the registry of the court in full satisfaction of all claims under the policy.

On the trial the following documents were introduced in evidence: The application of Maye Patterson, dated July 12, 1934, it not having been attached to or made a part of the policy; the certificate attached to same, signed by G. A. Brown, Agent, that; from personal appearance and his investigation, the age of the applicant was 36 years and that he considered the risk good; the receipt for $3 signed by the agent Brown (quoted above); the medical examiner's report in which he stated that the applicant appeared to be in good health, and that the risk was first class; the insurance policy issued as of July 23, 1934, in which it was provided that it would not take effect "unless on the date and delivery hereof the insured is alive and in sound health," that no person except certain named officers of the company had the power to modify, or, in event of lapse, to reinstate the policy or extend the time of payment of a premium, and that no agent had the power on behalf of the company to waive any forfeiture or to bind the company by making any promise or by making or receiving any representation or information; the claimant's statement under date of August 4, 1934; the physician's statement that the insured died from pulmonary embolism, resulting from septic infection following an operation for abscess between walls of vagina and rectum, duration seven days; that she was not afflicted with any deformity or chronic disease; that he visited her first on July 16, 1934; and that she died on July 26, 1934, in a hospital at Royston, Georgia. The plaintiff also introduced a policyholder's receipt book with certain entries of payment and signature of the agent Brown; copy of letter from the plaintiff's counsel, B. F. Davis, to the defendant, dated September 22, 1934, demanding payment and notifying defendant that in the event of suit 25 per cent. damages and attorney's fees would be claimed; copy of letter from the defendant to its district manager at Athens, Ga., dated Sep-

tember 22, 1934, forwarding the letter with instructions that it be turned over to defendant's counsel for attention; copy of letter from plaintiff's counsel, Wheeler & Kenyon, to same effect as letter from counsel B. F. Davis; and a photograph of the insured.

The plaintiff testified that he paid to the agent Brown and received from him a receipt for $3 at the time the insured made application for insurance, the same covering twelve-weeks premiums paid in advance; that at the time she was in good health but became sick on July 15, 1934, was taken to Dr. Brown's hospital at Royston on July 16, 1934, and died on July 26, 1934; that previously she had always been in sound health, worked all summer, helping in making a crop, hoeing, cooking, and working like women do on a farm; that she was in the yard sweeping when the agent took her application; that she ate and slept normally; that the picture of her was taken a few days before she took out the insurance; that on the day after he took her from the hospital Brown had the policy for him, but he told Brown he was in no shape to take it then, and Brown said he would deliver it the following day; that Brown knew when he delivered the policy that the insured was dead and buried; that Brown, after delivering the policy, said he would take it up with the district manager, Westmoreland, gave the plaintiff a receipt for the policy, and said he would have him a check in a day or two; that later he turned over the $3 receipt to Westmoreland at his request, who said he would have for the plaintiff a check inside of eight days; that Hill, the manager at Athens, afterward offered plaintiff the $3 back, witness declined to accept, and then asked for the $3 receipt and policy, which was refused, and then plaintiff employed counsel; that after Westmoreland's promises to have him a check in a few days he bought a marker for his daughter's grave, had a concrete wall built around it, bought gravel, but did not get the insurance money, and had to borrow money to pay for his cemetery expense, a total of $500 or $600; and that he would not have gone to the expense except for the promises made to him.

Brown, the agent, testified substantially to the facts given in evidence by the plaintiff as to the application and payment of twelve-weeks premiums and issuing the receipt therefor; that he had known the insured for some time; that the picture of her represented a likeness of her on that day; that the plaintiff was to

be named beneficiary, but by mistake the name of John E. Patterson was used; that Mrs. Patterson appeared to be in good health, looked healthy, and he did not see anything wrong with her and never heard of her having any sickness of any consequence; that Dr. Heller told him she was a good risk; that he is a good and reputable doctor, and Brown had known him about five years; that the $3 was sent in with the week's report following the report with which he sent the application; that in the premium-receipt book he put the amount paid; that when he issued the receipt for $3 the policy was put in force; that when he delivered the policy to the plaintiff he knew the insured was dead and buried; that he prepared the proof of death and sent it in to the general manager, after being instructed by Westmoreland to make up the proof; that Mrs. Patterson was in the yard when he obtained the application; that he received the policy from the company on July 23, 1934; that the company did not tell him not to deliver it; that the plaintiff was not available when he went to deliver the policy on July 23, 1934, and that is why he did not leave it then, because it was his policy; and that he had it in his hands for the plaintiff three days before the death of the insured.

John H. Davis, an attorney, testified that under the facts of the case $150 to $200 would be a reasonable attorney's fee. T. C. Burton, an attorney, testified that in his opinion $150 would be reasonable attorney's fees. B. F. Davis testified that he was employed by the plaintiff, and had some correspondence with the defendant about returning the receipt and the policy, but did not succeed in getting them until about November 6, 1934, when they were turned over to him by the defendant's counsel.

R. G. Hill, district manager for the defendant, testified that he tendered back the $3 to the plaintiff, because the insured was not in sound health at the time the policy was taken out; that he did not promise the plaintiff that the company would pay the claim; that the receipt looked like agent Brown's signature; that it is to the company's benefit to have as much as possible paid in advance; that he turned over the whole file, including receipt and policy, to the company's attorneys; that the policy, dated July 23, 1934, was probably issued in Chattanooga four or five days before that date, about July 18, or 19, and could not have been issued before July 15; that the Athens cashier approved the receipt and the ap-

plication, and it went to the home office; that in the agent's collecting book no entry appears for a collection on the policy; and when the Athens cashier approves the application she has nothing to do with the premium.

G. S. Westmoreland, superintendent for the defendant testified that he did not promise the plaintiff anything about the payment of the policy; that there is no record of the premium having been collected from the plaintiff or the insured in any of the books that he has examined; and that the signature on the $3 receipt is that of the agent Brown. R. G. Hill, recalled, testified that he tendered $3 to the plaintiff; that the application was not attached to the policy when delivered; and that the collection of $3 was not entered on Brown's book or on the company's records.

Dr. Bruce Shaeffer testified that an abscess between the walls of the vagina and rectum commonly comes from some poisonous condition in the lower bowels, and can be either fistula or a pilo cyst; that the length of time it takes such a condition to localize varies—from the onset, from one week to ten days; that an abscess can be formed from a number of causes; that one cause is trauma, which is anything that punctures through the skin, a lick or stab or blow, that punctures the skin, and patients usually set up inflammation; that it may happen anywhere on the body or inside the body, and when poisonous matter sets up in a traumatic condition, then a flesh inflammation is set up on the patient and gathers pus very rapidly; that around the rectum one is likely to have more poisonous matter than anywhere else in the body, and if a trauma occurs near the rectum with the poisonous condition attendant, that portion of the body will set up an abscess very quickly, might become acute very quickly, and might cause pain in twenty-four hours—could arise in eighteen hours.

The plaintiff, recalled, testified that he saw agent Brown every day during the time his daughter was in the hospital; that Brown asked witness about her condition, and was informed; and that he knew all about her condition on July 20, 23, and 25. It was agreed between the parties that the beneficiary was intended to be John E. Stonecypher instead of John E. Patterson, and that the contract be so reformed. The jury found for the plaintiff $345 with $15.61 interest, $34.50 damages, and $150 attorney's fee. A motion for new trial, on the general grounds and on several special grounds, was overruled, and the defendant excepted.

■ The first special ground complains that the court erred in admitting in evidence the $3 receipt form signed by the agent Brown. In the view we take of the case the evidence was very pertinent and admissible. Properly construed, the petition set out a cause of action on a contract of insurance based, not merely on the policy which was issued subsequently to the application, but also on the so-called "receipt" form. It is not disputed that the instrument signed by Brown was the one regularly employed by the defendant in seeking insurance contracts through its authorized agents. It will be observed that under that instrument it is intended that the amount of the initial premium paid by the applicant for insurance be therein stated, but it also serves another contractual purpose. It provides for either of two possibilities. One is that "No obligation is incurred by said company by reason of this deposit, unless and until a policy is issued upon said application, and unless at the date of the delivery of the policy the life proposed is alive and in sound health." But it also provides: *"Except* that if the life proposed is now in sound health, and the amount paid by the applicant at the time the application is written *is not less than four weekly premiums,* and this receipt, detached from the original application, covering said payments, is surrendered to the company, the company agrees, if the application is approved by the home office in Chattanooga, Tennessee, that *should death occur prior to the delivery of this policy,* it will nevertheless pay such amounts as would have been due under the policy if issued. No obligation is assumed by the company unless the application is so approved and the life proposed is now in sound health." (Italics ours.) In other words, under the first provision, where less than four weekly premiums are paid in advance, no obligation is undertaken by the company until a policy is issued, etc.; but under the second provision the company binds itself, on the conditions named, and even though no policy is issued, to pay such amounts as would be due under a policy if issued. Under the last provision, questions as to delivery of the policy and as to change of condition of the health of the insured are eliminated. Therefore it was pertinent for the plaintiff to show by the instrument that he had paid as many as four weekly premiums at the time of the application, and to show by the same paper what obligation was assumed by the insurance company through its authorized agent.

The second special ground complains of the admission in evidence of a photograph of the insured. According to the testimony of the plaintiff, the picture was taken only a few days before she was taken ill; and the agent Brown testified that it was a good likeness of her at the time of her application, and that she appeared to be in good health at the time. We think the photograph was admissible for what it might be worth to the jury, in connection with the nature of her subsequent illness at the hospital and the contention of the defendant that she practiced fraud upon it in representing that she was in good health.

The third special ground complains that the court erred in admitting the testimony of the plaintiff that the agent Brown said he would send the policy in, and that he would have a check back in a day or two; the ground of the objection being that "the policy itself is the contract sued on, and will show the liability under the policy, and anything that Mr. Brown said would not affect the policy and would not bind the company." As shown in the discussion of the first special ground, the plaintiff's right to recover, if any, is not limited to the conditions in the policy, and the quoted testimony was not inadmissible for the reason assigned.

Ground 4 complains that the court erred in admitting in evidence the testimony of the plaintiff, that "After my daughter died I went to see Mr. Westmoreland [territory superintendent of the company], and he told me that he would have a check there in the next few days, and I went ahead and bought a marker for her grave and had a concrete wall built around her grave and bought some gravel, and I didn't get the insurance money and I had to borrow the money to pay for it. I spent more than the amount of this policy fixing up my daughter's grave." The ground of objection was that this testimony was "immaterial and irrelevant." The evidence was not inadmissible on this ground of objection. Moreover, it has been held that an objection of this kind is too general to present anything for consideration. *Scott* v. *State,* 46 *Ga. App.* 213 (3) (167 S. E. 210). See also *Hayes* v. *State,* 36 *Ga. App.* 668 (137 S. E. 860); *Guaranty Life Ins. Co.* v. *Primo,* 37 *Ga. App.* 472, 474 (140 S. E. 780); *Farley* v. *Servwell Corporation,* 39 *Ga. App.* 93 (2) (146 S. E. 323); *York* v. *State,* 42 *Ga. App.* 453 (30) (156 S. E. 733); *Gordon* v. *Gilmore,* 141 *Ga.* 347 (2 a) (80 S. E. 1007); *Richardson* v. *State,* 141 *Ga.* 782 (2) (82 S. E. 134); *Kirkland* v. *Ferris,* 145 *Ga.* 93 (4) (88 S. E. 680).

Ground 5 complains that the court erred in charging the jury, in effect, that if the agent of the company, or the company through its agent, knew of the unsound health of the insured under the policy, and delivered the policy or accepted the policy, the company would be held to have waived the provision of the policy requiring that the insured be in sound health at the date of the delivery of the policy; that the receipt by an agent of a policy from his company, to be unconditionally delivered by him to the applicant, is in law tantamount to delivery to the insured, although the agent never parts with possession of the policy, and although its delivery is by contract made essential to its validity; that if the jury believed that at the delivery of the policy the agent knew of the unsound health of the insured or that she was dead, the delivery would amount to a waiver of the provisions of the policy, and the company would be bound by the act of the agent. It is contended that the court erred in omitting to charge fully as to what in law constitutes waiver, and failed to cover the substantial issues made by the pleadings and the evidence; and that the court should have charged the jury fully as to waiver, without a request. Whether or not the court correctly charged the jury in the respect named, the defendant can not be said to have been harmed, inasmuch as the plaintiff, as shown by the evidence, had paid more than four weekly premiums, the application had been accepted by the company, and his right to recover is independent of the issuance or delivery of the policy or of the unsound condition of the insured at such time.

Ground 6 complains that the verdict award of damages was contrary to the evidence, in that movant had a valid and legal defense to the suit, and was entitled to come into court and defend; that the verdict was without evidence to support it and was strongly against the weight of the evidence, and contrary to law and the principles of justice and equity.

Ground 7 complains that the award of attorney's fee was contrary to the evidence, in that movant had a valid and legal defense to the suit, and was not liable for damages and fees; and that the verdict and judgment are decidedly and strongly against the weight of the evidence. It is true that a jury can not legally award such damages and attorney's fees capriciously; but we think that the evidence made an issue for the jury, and that it can not

be said that the verdict in such respects was not authorized. It appears from the evidence that the receipt and policy were delivered early in August, 1934, and that they were submitted with the proof of death to the home office of the defendant, that payment was refused, that it was necessary to employ counsel to obtain the papers back, and that they were not returned to the plaintiff through its counsel until November 6, 1934. There was testimony that $150 to $200 would be a reasonable attorney's fee.

■ As to the general grounds, the following applies: As shown in the discussion under the special grounds, the present suit is based on a contract of insurance evidenced by the receipt form issued by the authorized agent of the defendant. Under that instrument, the company, in the event of advance payment of not less than four weekly premiums, the applicant being at the time in sound health and the application being accepted at the home office of the company, and, after the death of the insured, the receipt form, detached from the original application (which is not attached to or made a part of the policy to be issued upon conditions named in the "receipt"), being surrendered to the company, is liable for the amount of insurance contracted for, independently of the issuance or delivery of a policy. It was admitted in the answer of the defendant that the application had been received and approved at the home office. It was agreed that the intended beneficiary is the plaintiff. The jury was authorized to find that twelve weekly premiums had been paid in advance, and that all of the conditions applying when such payment is made had been complied with. It was also a jury question as to whether or not the conduct of the defendant was such as to justify the award of damages and attorney's fee. The evidence was sufficient to support the verdict in all of its findings. The court did not err in overruling the motion for new trial.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*