27227.  BROWN *v.* SALTER.

DECIDED JANUARY 23, 1939.  REHEARING DENIED MARCH 4, 1939.

580

*A. B. Conger,* for plaintiff in error.

*H. B. Spooner, J. C. Hale, Vance Custer,* contra.

SUTTON, J. 1. "If on the consummation of a sale of merchandise the buyer retains out of the money to be paid a specific sum for the purpose of paying a processing tax, whereas such tax is invalid and therefore is not paid by the buyer, and the buyer continues to retain the sum so withheld, the seller may recover same as unpaid purchase-money." *Salter* v. *Brown,* 56 *Ga. App.* 792 (193 S. E. 903). Whether the buyer retains a part of the purchase-money for the genuine purpose of paying a processing tax, or merely retains such sum under a pretext of having to pay a processing tax, the seller is entitled to a return of the money if it is in fact not paid out but retained by the buyer after the processing tax act is declared invalid, even assuming, but not conceding, that under the terms of the act the grower and seller of the peanuts was subject to the tax.

2. The jury was authorized to find from the conflicting evidence in the present case that on November 6, 1935, the plaintiff sold to the defendant 7775 pounds of Spanish peanuts and 9720 pounds of runner peanuts at the "market price" then existing; that the defendant paid the plaintiff $63 per ton for the Spanish peanuts and $53 per ton for the runner peanuts after deducting $20 per ton, or $174.95, the amount sued for in the present case, with the explanation that such deduction represented the amount of a "processing tax" which, under the so-called agricultural adjustment act, he would have to pay on the peanuts to the United States Government; that the market price, at the time of the sale, exclusive of the alleged processing tax, was $85 per ton for the Spanish peanuts and $75 per ton for the runner peanuts; that the defendant, in an equitable suit against the collector of internal revenue for the District of Georgia, filed on September 16, 1935, and subsequently amended, in the District Court of the United States for the Columbus Division of the Middle Georgia District, attacked the so-called agricultural adjustment act of Congress, under which processing taxes were levied in certain cases, as being unconstitutional and void, and prevailed in said suit, the court, on January 24, 1936, permanently enjoining the collection of processing taxes from

the petitioner, the defendant in the present suit, and ordering to be returned to him, less certain fees of the clerk of the court, certain funds which as processing taxes had been paid into the registry of the court pending a decision of the case; that such funds were in fact returned to him; that the amount deducted from the purchase-price of the peanuts delivered to the defendant by the plaintiff, $174.95, being $20 per ton on 17,495 pounds of peanuts, was retained by the defendant and not paid to the United States Government as a processing tax as he alleged would be necessary when purchasing the peanuts from the plaintiff; and under such evidence and the principle of law announced in the first paragraph the jury was authorized to find that the sum of $174.95 was due to the plaintiff from the defendant as part of the unpaid purchase-price of the peanuts delivered under the sale of November 6, 1935, and to return a verdict in favor of the plaintiff accordingly.

3. The grounds of the motion assigning error on various portions of the charge of the court are without merit. The court gave to the jury substantially correct instructions as to the law applicable to the case under the pleadings and the evidence. Taken in connection with the entire charge and the evidence, we do not think that they could be said to have confused or misled the jury as to the issue involved, but were proper instructions under the pleadings and the evidence.

4. The ground of the motion complaining that the court erred in admitting certain documentary evidence, in that it was "irrelevant and immaterial," is too general and in law insufficient to present anything for consideration. *Interstate Life &c. Co.* v. *Stonecypher,* 54 *Ga. App.* 497, 506 (188 S. E. 294), and cit.

5. Two other grounds of the motion for new trial, not being argued or insisted on, are treated as abandoned.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*

ON MOTION FOR REHEARING.

SUTTON, J. Counsel for the plaintiff in error contends that this court has predicated its decision on the erroneous assumption that the grower of peanuts was subject to a processing tax, and not on the principle that, if in a sale of merchandise a price is agreed upon and the buyer pays only a part of that price, he is due to pay the seller the remainder. In other words, as contended, the court has employed a syllogism in which there is assumed the inaccurate

major premise that a grower of peanuts was subject to the processing tax, the true minor premise that Salter was a grower of peanuts, and the conclusion that therefore Salter was subject to the processing tax prescribed by the so-called agricultural adjustment act; that from that erroneous deduction the court then proceeds to reach the conclusion as a matter of law that, the tax having been declared unconstitutional and void, the amount alleged to have been deducted by Brown was payable to Salter. It is then properly contended that the court did not determine as a matter of law that the tax was applicable to a grower, and it is asserted that the court merely "assumed" that it was, and that therein the decision is not based on substance of fact. It is further contended that Brown made no deduction from the market price of peanuts; that Salter was paid as much as he could have obtained anywhere in Southwest Georgia; that there was no evidence that the market price was higher than the amount paid by Brown; that there was no evidence of any peanuts having been processed by Brown, and that in any event it was of no concern to Salter whether or not Brown received from the United States government any refund of money paid to it or into court after an injunction had been granted in Brown's equity suit. In short, it is contended with much earnestness and evident sincerity that this court should have eliminated any question of deduction for tax, should have found that Salter was paid all that was agreed to be paid, and all that any of the buyers in Southwest Georgia would have paid. Having set forth what we conceive to be substantially the argument of counsel, the following may be set forth in elaboration of the syllabus opinion heretofore rendered:

Why should this court concern itself with the question whether or not the tax under the agricultural adjustment act was applicable to a grower of peanuts when no issue is made in that respect? Counsel for the plaintiff in error contends that it was not applicable. Counsel for the defendant in error admits it. The plaintiff's petition did not allege it, and did not allege that any arm of the United States government had ever attempted to collect a processing tax from a grower. It alleges only that Salter sold Brown certain peanuts at the *market* price, and that in paying him for the peanuts Brown deducted $20 per ton "as a processing tax levied and imposed by the Department of Agriculture and the Secretary

of Agriculture of the United States under the acts of Congress." The decision in *Salter* v. *Brown*, 56 *Ga. App.* 792 (193 S. E. 903), which is the law of this case, is not predicated on any assumption that the tax was applicable to Salter. It decides nothing with reference to its applicability to any grower. It does not assume or indicate that Brown represented to Salter that Salter was subject to the tax, or that the deduction made by Brown was because Salter was subject to the tax. That decision holds: "If, on the consummation of a sale of merchandise, the buyer retains out of the money to be paid a specific sum for the purpose of paying a processing tax, whereas such tax is invalid and therefore is not paid by the buyer, and the buyer continues to retain the sum so withheld, the seller may recover same as unpaid purchase-money." So far as the petition and the decision show, the deduction was just an arbitrary act, accompanied by an explanation thereof.

Counsel asks why the agricultural adjustment act was referred to in the opinion if there is involved no question of the applicability of the tax to a grower of peanuts. The reference was only in connection with the defendant's explanation, as the jury was authorized to find was made, that the deduction, at the time of paying Salter, was the amount of a processing tax which Brown, the buyer, would have to pay to the United States government, and in connection with the fact that the refund obtained by Brown was as to money paid by him into court as processing taxes under the act of Congress; all of such recitals or references being for the purpose of showing that, although the buyer had deducted an amount *as if,* or on the theory that, he would have to pay a processing tax on the peanuts being purchased, the recovery of all amounts paid into court after Brown had obtained an injunction against the collector of internal revenue on September 16, 1935, left Brown in the position of not having paid any such taxes after that date, and as he did not purchase the peanuts from Salter until November 6, 1935, he was in effect unduly retaining the amount deducted in the settlement with Salter. Therefore, under the decision in 56 *Ga. App.* 792 (supra), Salter was entitled to recover $20 per ton as an unpaid part of the purchase-price.

The above proceeds, of course, on the premise that the market price of peanuts at the time of the sale to Brown could, under the evidence, have been found to be $20 per ton in excess of the amount

received by Salter, and it is contended by counsel for the plaintiff in error that the evidence shows that Salter received as much from Brown as would have been paid by any buyer in Southwest Georgia, and that Salter in fact received the *market* price. In support of this contention reference is made to the testimony of several witnesses to that effect. But, as we shall presently show, there was evidence to the contrary, and in the conflict thus made the jury was authorized to accept the testimony of such witnesses as they chose.

The plaintiff testified: "I sold Mr. Brown on November 6th, 1935, 9720 pounds of runner peanuts and 7775 pounds of Spanish peanuts. . . I sold them to Mr. Brown at the market price and the deduction was made. . . There was a deduction made in the market price in the amount of $20 for processing tax, $20 per ton. He has never paid the $20 per ton. . . I didn't get the market price, what we were supposed to get. Peanuts were bringing $85 per ton at the time. . . I didn't receive the market price. . . There was a sign over the door, and it had on it the price of peanuts less the processing tax. . . The reason I am in position to testify what the market price of peanuts was in November, 1935, I remember what was over the door. . . He paid me $65 per ton. . . The board on the wall was in his office where every one could see it. There was on that board that peanuts was $85 per ton, less $20 per ton processing tax. I looked at it good, and then asked Mr. Brown who was going to lose the $20. I discussed what was on that board with Mr. Brown. The $20 was right under the $85. Mr. Brown stated whether or not he was making a deduction from the $85 per ton. He stated he was making it for the payment of a processing tax. He was knocking off $20 per ton." It was shown that the market price of peanuts was quoted in the Albany Herald, published in the vicinity in which the transaction took place, as follows: "Local Peanut Market. Spanish No. 1's—$85 (less $20 tax paid to Federal government)."

C. W. Hand, a witness for the defendant, testified: "The market price of Spanish peanuts on November 6, 1935, was $62.50. . . The price of runner peanuts on November 6, 1935, was $52.50 per ton. . . The market price of peanuts in Albany was the same thing. . . I can not answer whether the processing tax was included in the market price. . . I gave $62.50 for peanuts per

ton. . . I have seen quotations like, peanuts so much per ton, less Federal tax." Fred Carroll, a witness for the defendant, testified: "There is usually the same price between the several mills in Southwest Georgia to the penny, with an occasional variation of maybe a dollar. . . I have seen the Albany Herald. It carried the market reports about that time."

W. W. Hodges, a witness for the plaintiff, testified: "I was engaged in farming in 1935, and assistant to the county agent. I kept up with the prices of peanuts from a daily newspaper and in other ways. In the fall of 1935 I noticed the quotations in the Albany Herald. I would say they were approximately correct. I know the defendant, L. C. Brown, and know where his place of business is. I have been in that place of business since the processing tax went into effect. I haven't sold Mr. Brown any peanuts since 1934, but there was a sign there then. The processing tax was then in effect. There was on that board quoted U. S. No. 1 Spanish peanuts, and it was quoted at a certain price, and it said less $20 tax. . . When I testified about the market price in '35, that included the $20 processing tax. When I said $65, that did not include the processing tax." D. D. Dean, a witness for the plaintiff, testified: "I kept up with the market price in '35 a part of the time. . . I know L. C. Brown and know where his place of business is located in West Bainbridge. I noticed price quotations in his place of business. . . It [the board] had the price of peanuts, less $20 processing tax." Pet Hatcher, a witness for the plaintiff, testified: "I am engaged in farming and raise peanuts. In the fall of 1935 I kept up with the price of peanuts. I read and saw the Albany Herald as to market quotations, which was approximately correct. I know L. C. Brown, the defendant, and know where his place of business is located. I went there in the fall of 1935 and saw a sign quoting the price of peanuts around his office. . . There was on the sign the price of peanuts that day, less the government tax. . . I inquired of the price at Mr. Brown's place. He was paying as much as anybody else. Everybody was taking out $20 for processing tax. . . I sold my peanuts to Mr. Brown. I got the highest price I could after the processing tax was taken off. I got every dime Mr. Brown said he would pay me after he deducted the tax. Mr. Brown deducted from the market price." J. E. Harrell, a witness for the

plaintiff, testified: "During the fall of 1935 I undertook to keep up with the market price of peanuts. I read the Albany Herald. Those quotations were approximately correct. I know L. C. Brown, the defendant, and know where his place of business is located. I went there in 1935 and saw a sign around his office quoting the price of peanuts. . . I read on that board the price of peanuts, less tax, and then it would have the net price of peanuts. . . I sold Mr. Brown two loads of peanuts in 1935. He paid me the market price, less $20 per ton processing tax; that is what I understood. I agreed with him on a price, less the processing tax."

Salter did not in one day deliver to Brown the peanuts which he testified he had sold at the market price. He testified that he delivered them at intervals, and that in paying him Brown deducted $20 per ton from the market price, explaining that it was to be used in paying a processing tax. Brown, of course, testified that he never deducted anything, but paid what he had agreed to pay, and that it was the market price. We are given to understand that the theory of a deduction by Brown of any amount for paying a processing tax is untenable, and from this we would gather that Brown would never contemplate that any grower would claim any part of the refund obtained by him from the United States government. But Salter's contention that Brown did deduct something from the market price finds support in the allegations of Brown's petition in the Federal court, where he stated: "It is impossible for complainant to prove what portion, if any, of processing taxes paid by him or demanded to be paid by him, by defendant, has *been or would be either deducted from the purchaseprice of peanuts purchased by complainant* or added to the selling price of peanut products processed and sold by complainant. It is impossible to determine who, in the last analysis, pays the processing tax, the grower, the processor, the purchaser from the processor, or the final consumer." (Italics ours.)

Under the ruling made in *Salter* v. *Brown,* supra, and the facts which the jury in the present case was authorized to find, the verdict was amply authorized. It clearly appears that Brown did not, in the last analysis, pay any processing tax on peanuts after November 6, 1935, the date on which Salter contracted with Brown. The record shows that before that date he had filed his equitable petition against the collector of internal revenue for Georgia, seek-

ing to restrain the collection of taxes prescribed by the agricultural adjustment act; that he obtained a temporary injunction, but was required to pay into court the sums which would be due from him under the act if valid; that on January 24, 1936, the collection of such tax was permanently enjoined, and on the same day the attorney of Brown received from the clerk and treasurer of the Federal court the sum of $7420, which had been deposited with the court, less "1 % commission." So, if Salter is to be believed, Brown deducted $20 per ton from what was shown by testimony to have been the market price of peanuts, the basis on which the two parties contracted, the deduction being made on the theory or with the explanation that he, Brown, would have to pay a processing tax, and as the jury was authorized to find that he had not absolutely and finally paid such tax but retained such an amount as an unpaid portion of the purchase-price, the plaintiff was entitled, under the ruling in *Salter* v. *Brown,* supra, to recover the amount deducted. The motion for rehearing is denied.