29828.   COLUMBIAN PEANUT COMPANY *v.* POPE.

DECIDED FEBRUARY 18, 1943.   REHEARING DENIED MARCH 9, 1943.

*A. B. Conger,* for plaintiff in error.

*H. B. Spooner, Vance Custer, J. C. Hale,* contra.

SUTTON, J.   R. G. Pope brought suit against the Columbian Peanut Company, alleging that the defendant was indebted to him in the sum of $877.77 as the unpaid balance of the purchase-price of certain peanuts which were sold at the "market price," and that the defendant deducted in settlement $20 per ton, aggregating the said amount, as a processing tax levied and imposed by the agricultural adjustment act of May 12, 1933, which was subsequently declared invalid by the United States Supreme Court, and that the defendant has never paid the United States Government or any officer or department thereof the amount of the processing tax so deducted.   The defendant denied liability, and on the trial of the case the jury returned a verdict for the plaintiff in the amount sued for.   The defendant moved for a new trial on the general grounds, and by amendment added special grounds.   The exception is to the overruling of the motion.

The evidence was undisputed that the plaintiff sold and delivered to the defendant, during the time the agricultural adjust-

ment act was in force, the quantity of peanuts as alleged by the plaintiff, and that said act was subsequently declared invalid. The evidence showed that the defendant had not paid to the United States Government the amount of the processing tax alleged to have been deducted, but had enjoined the collection of the tax from it as a processor; and that while it paid into court certain amounts as processing tax while its suit was pending in equity, after the act was declared invalid a refund was made to the defendant, less a certain percentage fee due to the clerk of the court. The issue in the case was whether the plaintiff sold the peanuts at the "market price," and the defendant in making settlement wrongfully deducted $20 per ton as a processing tax under the pretense or belief that it would have to pay such an amount to the United States Government, or whether the amount paid represented the full purchase-price without respect to any question of a processing tax. Without setting forth at length the evidence adduced on the trial, and which was conflicting, we think that it was sufficient to authorize the jury to find that the peanuts were sold at the market price then existing, and that the amount paid the plaintiff was $20 per ton less than the market price, which sum per ton was retained by the defendant for the alleged purpose of paying a processing tax. In *Salter* v. *Brown,* supra, it was held: "If, on the consummation of a sale of merchandise, the buyer retains out of the money to be paid a specific sum for the purpose of paying a processing tax, whereas such tax is invalid and therefore is not paid by the buyer, and the buyer continues to retain the sum so withheld, the seller may recover same as unpaid purchase-money." See also *Brown* v. *Salter,* 59 *Ga. App.* 579 (1 S. E. 2d, 468). Under the law and the evidence the verdict in favor of the plaintiff was authorized, and the court did not err in overruling the motion for new trial on the general grounds.

■ Special ground 1 of the motion for new trial complains that the judge erred in refusing, on motion, to disqualify himself from presiding in the case, by reason of the following facts: The judge took office on November 27, 1939. Before his election in the fall of 1939, he as an attorney at law prepared and filed suits and represented plaintiffs in several cases against defendants, including the present defendant, which suits were similar in nature to the one now under consideration and were pending at the time the

present case was being tried, and in all of which he had a contingent fee of fifty per cent. In answer to the motion to disqualify, the judge made the following response: "He was employed by certain clients to file suits in the city court of Bainbridge, some two or three years ago. Upon becoming judge of the city court of Bainbridge, it is his opinion that under no circumstances can he represent any client in this court, the provisions of the city court of Bainbridge, under the act creating it in the laws of this State. And further, that the court holds no pecuniary interest in the result of any case in which the defendant in this case is involved." Special ground 2, which may be considered in connection with ground 1, complains that the presiding judge failed to disqualify himself on motion of the defendant, under facts which showed that before his elevation to the bench he had filed against the defendant a suit which in every respect was identical with the present one, except as to the plaintiff and the amount sued for. The suit was dismissed on September 19, 1941, but under the contention of the defendant it could have been recommenced within six months. The court made the following response: "The case in which the presiding judge was plaintiff was dismissed by the plaintiff's attorney at the instruction and request of the plaintiff, without any prejudice in the mind of the plaintiff as to the case now sounded. The court further states that the dismissal of the case in which the court was a former plaintiff was dismissed by his attorney at his instruction and request. The court states here and now that the case is dismissed, and the now presiding judge has no interest in reinstating or offering to reinstate it before it is barred by the statute of limitations."

The Code, § 24-102, provides: "No judge or justice of any court, no ordinary, justice of the peace, nor presiding officer of any inferior judicature or commission, shall sit in any cause or proceeding in which he is pecuniarily interested, or related to either party within the fourth degree of consanguinity or affinity, nor in which he has been of counsel, nor in which he has presided in any inferior judicature, when his ruling or decision is the subject of review, without the consent of all the parties in interest; Provided, that in all cases in which the presiding judge of the superior court may have been employed as counsel before his appointment as judge, he shall preside in such cases if the opposite party or counsel agree in

writing that he may preside, unless the judge declines so to do." By the act of 1935 (Ga. L. 1935, p. 396) "All judges, grand and trial jurors in the courts of this State, shall be disqualified to preside, act, or serve, in any case or matter, when such judge or juror is related by consanguinity or affinity to any party interested in the result of the case or matter, *within the sixth degree, as computed according to the civil law,* and relationship more remote shall not be a disqualification." (Italics ours.) The grounds of disqualification provided in the statutes are exhaustive, and do not include prejudice or bias that is not based on a pecuniary or relationship interest. *Elder* v. *Camp,* 193 *Ga.* 320, 321 (18 S. E. 2d, 622). It was not shown by the motion that the presiding judge continued as attorney for the plaintiffs in whose behalf he had filed similar suits, or that he had any pecuniary or other interest in the cases at the time of the trial of the present case. The judge affirmatively stated that he had no pecuniary interest in the result of any case in which the defendant herein was involved. It is not shown that he was pecuniarily interested in the present case (though he had formerly filed a suit against the same defendant), or that he was related within the prohibited degree to any party having an interest in the suit, or that he had ever been of counsel in the present case or had presided in any hearing of it in an inferior judicatory. The grounds of the motion are obviously without merit.

■ It is properly conceded in the brief of counsel for the plaintiff in error that the contention in special ground 3 of the motion for new trial has been ruled on adversely to the movant by the Supreme Court; and consequently no discussion is deemed necessary.

■ Ground 4 complains that the court erred in permitting the plaintiff to testify, over objection, that he knew from general information that all of the peanut buyers in southwest Georgia were deducting $20 per ton for processing tax; that he knew from general information and the three people to whom he sold; that he sold to others besides the defendant; and that all deducted $20 per ton from the price at which he sold his peanuts. It was objected that such testimony was hearsay and based on general information, and was irrelevant and immaterial, and that the conduct of others was irrelevant and immaterial with respect to the present suit which was based upon a definite contract. The testimony as to what the defendant told the plaintiff was obviously not hearsay, and

the objection to exclude all of the testimony as hearsay was too general. It is not error to refuse to admit testimony where the objection is made to it as a whole, and a part of it is admissible. *Loe* v. *Brown,* 155 *Ga.* 24 (2) (116 S. E. 309); *Waters* v. *Wells,* 155 *Ga.* 438 (3-b) (117 S. E. 322). Furthermore, the testimony, though hearsay except as to the defendant's alleged statement, was admissible, as an exception to the general rule, to determine the market price of peanuts at the time the sale was made to the defendant, it being contended by the plaintiff that they were sold at the "market price," and the hearsay evidence was admissible to show that the market price was $20 per ton more than the price actually paid to sellers. See *Brooke* v. *Cunningham,* 19 *Ga. App.* 21 (2) (90 S. E. 1037); *Central Railroad &c. Co.* v. *Skellie,* 86 *Ga.* 686, 692 (12 S. E. 1017); *Armour & Co.* v. *Ross,* 110 *Ga.* 403, 412 (35 S. E. 787); *Erk* v. *Simpson,* 137 *Ga.* 608, 613 (73 S. E. 1065).

■ Ground 5 complains that the court erred in permitting the plaintiff and five of his witnesses to testify, over objection, that they had respectively seen at the places of processors of peanuts, who were buyers, signboards with a quoted price on peanuts, "less a processing tax of $20," it being contended that such testimony was irrelevant and immaterial and shed no light on the issue involved, and that signboards at other places than that of the defendant could not affect the issue in the present suit. "Under repeated rulings of this court, it is not reversible error to admit evidence that is merely irrelevant and immaterial." *Mickle* v. *Moore,* 188 *Ga.* 444, 448 (4 S. E. 2d, 217). While the objection adds that the testimony shed no light on the present issue, it was not contended that the testimony was in any way prejudicial or harmful. Consequently this ground is without merit.

■ Ground 6 complains that the court erred in admitting in evidence a copy of the "Albany Herald," a newspaper published in Albany, Georgia, and having a circulation in southwest Georgia in an area in which peanut growers and processors are located, in which paper the following quotation on peanuts appeared at the time of the sale of peanuts by the plaintiff to the defendant: "Spanish No. 1s—$85 (less $20 tax to Federal Government)." The objection was that this quotation was hearsay evidence, and no proof had been made that the information given was correct, and that it

did not show from what source the information was obtained, and no effort was made to show that the source from which the information was derived was reliable or correct, and that it was otherwise irrelevant and immaterial and prejudicial. It is the general rule that a reliable and trustworthy trade journal or newspaper is admissible in evidence as an exception to the hearsay-evidence rule. In 2 Wigmore on Evidence, 26, § 1704, the eminent authority states: "A printed list of prices at which a class of goods is for sale to any purchaser, or a printed report of the prices obtained at actual sale in an open market, may become trustworthy so far as it is intended to be consulted by all persons who may care to know the prices, and has been exposed to a test of accuracy by dealings with such persons on the faith of it, and has further been in their experience found generally reliable (ante § 1702). A price-current list or a market report which fulfills these conditions and has thus sufficed for the correct information of persons who transact commercial operations on the faith of it may well suffice for informing a court of justice. It would not be necessary that the compiler of it should have personal observation of each dealing reported or going to make up the market price reported, because the practical equivalent of personal observation here exists; a report based on direct consultation with dealers or with the officers of an exchange or a market is in commercial circles taken as equally reliable." In Virginia v. West Virginia, 238 U. S. 202 (35 Sup. Ct. 795, 59 L. ed. 1272), it was held: "In proving market value, accredited price-currents, lists and market reports, including those published in trade journals and newspapers which are considered trustworthy are admissible in evidence." By citations of numerous cases the general rule is stated in the annotations following Atlantic National Bank v. Korrick, 29 Ariz. 468 (242 Pac. 1009) in 43 A. L. R. 1184, 1192, as follows: "It is a rule recognized generally that market reports or quotations as contained in newspapers and trade journals are competent evidence of the state of the market, since they are based upon a general survey of the whole market, and constantly received and acted upon by dealers, and accordingly are far more satisfactory and reliable than the individual entries or individual sales or inquiries; such evidence being within an exception to the general rule barring the admission of hearsay evidence, inasmuch as it comes from a public authentic

source which is deemed to give it reliability." In 20 Am. Jur. 118, § 969, the rule is stated: "It is generally recognized that market reports or quotations as printed and contained in newspapers, trade journals, trade circulars, price lists, and similar publications, which are well known, reliable, and of good repute, are admissible in evidence of the state of the market. Such reports, being based upon a general survey of the whole market and constantly received and acted upon by dealers, are far more satisfactory and reliable than individual entries or individual sales or inquiries. Courts would justly be the subject of ridicule if they should deliberately shut their eyes to the sources of information which the rest of the world relies upon and demand evidence of a less certain and satisfactory character. Such evidence is within an exception to the general rule barring the admission of hearsay evidence, inasmuch as it emanates from an authentic source of a public nature, which gives it reliability."

The general rule has, however, been accepted in some States subject to the qualification that to permit introduction of such evidence some preliminary proof must be made as to the authenticity or reliability of the source from which the data is compiled by the trade journal or newspaper; and the brief of counsel for the plaintiff cites and quotes from such minority views. Even if it be said that no preliminary proof was made as to the authenticity of the source from which the data was compiled in the Albany Herald, the record shows that sufficient evidence of authenticity was introduced after the admission of the newspaper, and therefore any premature admission of the paper ·in evidence was harmless. The plaintiff and several witnesses testified that the Albany Herald was a reputable newspaper and carried correct market reports. It appeared that the quotation of the market price of peanuts, as contained in the Albany Herald, was the same as the quotations shown on various bulletin boards at the locations of several processors and buyers of peanuts in southwest Georgia, the area in which the plaintiff sold his peanuts, including the place of business of the defendant. It further appeared that buyers and shellers of peanuts had an association in southwest Georgia, with headquarters at Albany, one H. W. MacLin being an official of such organization. He was a resident of Albany, and president of a peanut company with offices located at Albany and at Petersburg, Virginia, and admitted

that during the fall of 1935, the year in which the plaintiff's peanuts were sold to the defendant, he was inquired of at various times as to the prevailing peanut market. He testified that the Albany Herald had a wide circulation throughout southwest Georgia, that he had been taking the paper for twenty-five years, and that it was a reputable newspaper and carried market reports. He did testify, however, that the quotation on peanuts, showing a market price less $20 per ton for processing tax, was not correct. C. B. Townsley testified, that he had been connected with the paper since 1924, and was with it in 1935; that it was founded fifty years ago; that it was a reputable and reliable newspaper with a general circulation throughout southwest Georgia and undertook to carry correct market reports; that the officials of the paper had a conference with the peanut processors and shellers in regard to peanut quotations in 1935; that they agreed that H. W. MacLin would furnish the peanut market quotations to be published in the Albany Herald; that the quotations were in fact furnished to the Albany Herald by the processors' representative, Mr. MacLin; that he directed the form in which the quotations should appear; and that it was used. W. F. Prise testified that he was managing editor of the paper and had been connected with it for thirty-five years; that its market page had the reputation of being reliable; that in 1935 he was in charge of the market page of the paper; that the paper relied on MacLin, the representative of the processors' association, as the source of the information upon which quotations of the market price of peanuts were carried in the paper in 1935; and that such quotations were in the form which he instructed be used.

We are of the opinion that the above evidence was sufficient to authorize the conclusion that the source from which the Albany Herald compiled its data was authentic and such as might reasonably have been relied on by the paper in publishing market quotations of peanuts; and that as the evidence of witnesses for the plaintiff showed that the paper was trustworthy and reliable, its admission in evidence was not error. It is well settled that the admission in evidence of a document without the necessary preliminary foundation is not error where the necessary facts authorizing its admission are subsequently established. While the Albany Herald relied principally upon H. W. MacLin for information as to the price of peanuts, the data furnished by him, as testified by repre-

sentatives of the paper, is not to be considered as coming from a single or isolated source. There was testimony that he was the mouthpiece of members of an association of peanut processors and buyers in southwest Georgia having headquarters in Albany, and it had been agreed between members and the paper, who had sought them out for information as to the price of peanuts, that the composite state of the market as found in their experience would be reported to the paper, in their behalf, by MacLin. According to certain representatives of the paper, he did furnish such information; and finally, when called on from time to time, he stated that it was not necessary to inquire so often, and, in effect, that the prices being quoted would be considered as still prevailing until he advised them differently. He denied that the prices named in the paper were correct, but admitted that he had been called on at different times, although he could not remember whether it was in 1934, 1935, or 1936. But the witnesses for the plaintiff, in the employment of the paper, testified that the information carried in the market page came from MacLin, and that it was published in the form designated by him; and there was evidence that it was relied upon by growers of peanuts as a correct representation of the prevailing price of such product, a stated price, "less $20 per ton as processing tax."

The court allowed in evidence a copy of a suit brought by the defendant in the district court of the United States for the Eastern District of Virginia against the Internal Revenue Collector for that district, in which suit the present defendant set forth that it was engaged in the processing of peanuts in States including Georgia, and that in 1933 Congress enacted the agricultural adjustment act under which the defendant here had paid such Internal Revenue Collector, previously to the filing of the suit, the sum of $727,380.28 as so-called processing tax. The petitioner prayed in such suit that it be permitted to pay maturing processing tax into the treasury of the court, pending a determination by the Supreme Court of the United States as to the legality of the said act; and the court enjoined further collection of the tax from the petitioner in said suit, and permitted it, until the further order of the court, to pay the maturing tax into the treasury of the court. Also introduced in evidence in the present case was a final decree of the judge of the United States district court for the Eastern District

of Virginia in said case, dated January 21, 1936, in which decree it was set forth that the Supreme Court had declared the said act invalid, and ordering that the sum paid by the petitioner into the treasury of the court be returned to it, less one per cent. fee due the clerk of court. Ground 7 of the motion for new trial complains that the court erred in admitting such documentary evidence, it being contended (a) that it was irrelevant and immaterial and shed no light on the issue in the present case; (b) that it did not appear that the operations of the defendant in the territory in which the present plaintiff was situated had been taken into consideration in that suit; (c) that it did not show that any of the peanut purchases referred to were made in West Bainbridge; (d) that a judicial determination of the legality of the processing tax act would not in any wise affect the issue in the present case; and (e) that the tax did not attach until the peanuts were actually processed, and was not laid upon the grower. This ground is without merit. The plaintiff contended that for peanuts sold in 1935 at the "market price" the defendant had deducted in settlement $20 per ton as a processing tax. The evidence was admissible to show that in the final analysis the defendant had not paid any processing tax, in that after the act was declared invalid in 1936 a refund was made to it of the amount paid into the treasury of the district court of the United States, and that the defendant was retaining as against the plaintiff $20 per ton, if in fact, as contended by the plaintiff, such deduction was made from the purchase-price of the peanuts.

■ Ground 8 complains that the court erred in charging the jury: "Now if you believe from a preponderance of the evidence that the defendant did not deduct any sum of money from the purchase-price of the peanuts, then it would be your duty to find a verdict in favor of the defendant." It is contended that the charge was error, in that it put upon the defendant the burden of proving by a preponderance of the evidence that it did not make any deduction from the purchase-price of the peanuts, whereas such burden rested on the plaintiff. The court elsewhere in the charge stated to the jury that "the burden of proof rests upon the plaintiff to satisfy the jury of the truth of his case by a preponderance of the evidence," following which the court defined the meaning of preponderance of the evidence. It was nowhere charged that

the burden was on the defendant to prove to the jury that it did not deduct any sum from the purchase-price; and the movant errs in concluding that the excerpt complained of was a charge as to the burden of proof. It was, on the contrary, a charge as to the *effect* of evidence, which did not disclose that any sum had been deducted from the purchase-price of the peanuts. The ground is obviously without merit.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*