Moore, *appellant, vs.* Des Arts, *respondent.*

The defendant imported into the city of New-York goods on which the collector of customs exacted and received duties. The goods were by law entitled to a drawback of the duties in case they were exported within three years. The defendant sold the goods to the plaintiff at the "long price," which by custom and agreement included the amount of duties paid, and carried to the purchaser the right to the drawback. Afterwards, and while the plaintiffs yet owned the goods and could export them so as to get the drawback, or could sell them in market at the "long price," the secretary of the treasury decided that goods of that kind were *duty free*, and thereupon the duties were refunded to the importer. In consequence of such decision the right to a drawback was extinguished, and the market price of the article was immediately reduced by about the amount of duties which had been exacted. *Held*, on bill filed to recover the amount of duties returned to the defendant, there being no fraud in the case, and no warranty that the goods were dutiable, and no allegation that the plaintiff intended to export the goods, that the plaintiff could not recover.

*Quere*, whether, in case the plaintiff had a right to recover the money, the remedy would not be at law.

Appeal from chancery. Moore filed his bill before the vice chancellor of the first circuit against Des Arts, stating the case in substance as follows: In February, 1844, the defendant im

ported into the city of New-York 56,540 pounds of spelter, (a species of zinc,) on which the collector at the port of New-York exacted, and was paid by the importer, the sum of $565,40, for the duties, being twenty per cent ad valorem. The spelter was entitled to a drawback of the whole amount of duties in case it should be exported within three years. By usage and custom among merchants in New-York there are two modes of selling merchandise, so entitled to drawback; one at the "long price," the other at the "short price." By a sale at the "long price" is meant a sale at the full market value, including the amount paid for duties, so that the right to the drawback or return of duties is transferred to the purchaser, who receives back the duties in case he exports the article. By the "short price" of *such goods, is meant a price less than the* "long price" by about the amount of duties paid, and the purchaser at the "short price" is bound to export the goods so as to entitle them to the drawback which the importer receives; or in case the purchaser at the "short price" does not export them, then he is bound himself to pay to the importer the amount of the drawback.

After the spelter was imported, the complainant bought it of the defendant at the "long price," being 6½ cents per pound, amounting in all to $3675,10. The "short price" at the time of such purchase was 5½ cents per pound; so that the difference, (one cent on each pound,) would be $565,40, the amount of duties paid. After the purchase by the complainant, and in September, 1844, the secretary of the treasury decided that spelter was *free from duty*, under the name of " *teuteneque*," in the act of congress. And thereupon the sum of $565,40, being the amount of duties which the defendant had paid on the importation of the spelter in question, was refunded to him. The spelter was yet owned by the complainant, and in a condition to be exported, so as to entitle it to the drawback; but, as the bill alleged, by the decision of the secretary of the treasury, the right to the drawback on exporting the goods, was *lost and extinguished*, and by the same cause the price of the article was immediately reduced by about the amount of duties paid, and the article could no longer be sold at the "long price."

Moore v. Des Arts.

The bill further stated, that as soon as the decision of the secretary was made known, the complainant requested the defendant to furnish him with the proper authority to receive the return duties at the custom house, which the defendant refused to do; also, that after the defendant received such duties, the complainant demanded that the same be paid over to 'him, which payment the defendant also refused. The bill claimed to recover the said sum of $565,40. There was no allegation that the complainant ever intended to export the spelter, or that he would have exported it, so as to obtain the drawback.

The defendant demurred to the bill for want of equity, and his demurrer was overruled by the vice chancellor, whose decision was reversed by the chancellor on appeal, and the bill was ordered to be dismissed. The complainant appeals to this court.

*H. S. Dodge*, for the appellant. The case presented by the bill entitles the plaintiff to 'the relief prayed, whether the spelter was charged with the duties correctly or illegally. Assuming the duties to have been improperly exacted, it is a case of mutual mistake. Both parties assumed and *expressly* agreed, that the article was dutiable, would be entitled to drawback, and on such assumption the contract for sale at the "long price" was made. This (if a mistake) was a mistake of fact, not of law. The question of fact being what was the meaning of "teuteneque" in the act of congress. The decision of the collector of the customs as to this fact could not be reviewed.

But if the duties exacted were payable as the parties supposed them to be, then the plaintiff was deprived, by the exercise of the discretion of the secretary of the treasury, of an advantage for which he expressly contracted and paid; the literal performance of so much of the defendant's contract as required him to receive the drawback as trustee for the plaintiff has been prevented, but the defendant has received an indemnity which he holds as trustee for the plaintiff in the same manner as he would have held the drawback if it had been received. Here is not only a failure of consideration by accident, but at the

same time, a receipt of an indemnity, and precisely within the maxim "*neminem cum alterius detrimento fieri locupletiorem.*" (1 *Story's Eq. Jur.* § 472, 473; *Quick* v. *Stuyvesant*, 2 *Paige*, 84; *Chase* v. *Barrett*, 4 *id.* 148; *Hachett* v. *Pattle*, 6 *Madd.* 4; *May* v. *Bennett*, 1 *Russ.* 370.)

The plaintiff is the purchaser and assignee of the defendant's right to any return of the duties, as well to an indemnity for the drawback, as to the drawback itself, and his equity is like that of the complainant in *Randal* v. *Cochran*, (1 *Ves. sen.* 98;) *Wood* v. *Young*, (5 *Wend.* 620;) *New-York Ins. Co.* v. *Roulet*, (24 *id.* 505;) *S. C. by the name of Varet* v. *New-York Ins. Co.* (7 *Paige*, 561;) *Heard* v. *Bradford*, (4 *Mass. R.* 326;) 8 *id.* 340; 3 *id.* 443; 2 *Denio*, 224; 4 *Hill*, 635.

The remedy is not exclusively at law; if there be any remedy at law it is the *equitable* action for money had and received. This action is a substitute for a bill of equity, and assumes a concurrent jurisdiction in equity, and courts of equity have not lost their jurisdiction because the law courts have extended theirs. (2 *Story's Eq. Jur.* § 1255, 1256.)

*D. Lord*, for the respondent. I. The merchandize, spelter, was not in law dutiable; and so was not within the usage alleged as to debenture goods.

II. Both parties are to be deemed conversant of the commercial name of the article, and then, whether dutiable or not, was a question of law; the parties contracting in knowledge of the law and fact, are silent as to the sum exacted as a duty; it is the vendor's money, and the vendee, without a contract for it, cannot claim it.

III. The contract of sale merely, (without any mistake of fact, or fraud, or contract for the amount exacted,) does not carry with it any obligation of refunding any part of the supposed components of the cost of the goods.

IV. If the contract of sale, by its nature or the usage alleged, contains an agreement to refund any part of the cost, then the remedy is at law; here being neither trust, mistake, acci-

dent or fraud, and no ground of jurisdiction for discovery or account.

BRONSON, J. The case made by the bill amounts to this; and nothing more. The defendant imported the spelter, and paid the duties which were demanded by the government. The property was then sold to the complainant at the " long price," or full market value, which, according to the alleged usage in the city of New-York, and the intention of the parties, gave the complainant a right to the drawback, in case the goods should be exported at such time and in such manner as to entitle them to a drawback. While the goods still remained in a condition in which they might have been exported and the drawback secured, the secretary of the treasury decided, that the goods were free from duty ; and thereupon the money which had been wrongfully demanded of the defendant when he imported the spelter, was refunded to him by the government. Immediately on publishing the decision of the secretary of the treasury, the right to obtain the drawback on exporting the goods was lost ; and the complainant also lost the right and opportunity of obtaining an equivalent for the drawback by re-selling the goods at the " long price"—the market value of the goods being reduced by about the amount of the duties. On this case, the complainant insists, that the money which was refunded to the defendant belongs to him.

Although there is a seeming equity in favor of the complainant, I have not been able to discover any principle upon which his claim can be supported. There was no warranty when the complainant purchased that the goods were dutiable ; and no fraud of any kind is imputed to the defendant. So far as appears, the parties dealt upon equal terms, each knowing all that was known by the other. As the government officers have decided both ways on the question whether the spelter was subject to duties, it may fairly be presumed that these merchants knew that was a debateable question ; they knew that the decision which had been made by the collector might be overruled by the secretary of the treasury, and the duties be refunded to

the importer. With this knowledge the defendant sold, and the complainant purchased the spelter, with a right to the drawback, should that right ever become perfect. But there was no sale or purchase of the duties in case they should be refunded by the government, on the ground that the goods were not dutiable. At the time of the sale, there were two contingencies in which the duties might be restored to the importer: he might receive them as a drawback on exporting the goods; or the money might be refunded on the ground that it was improperly demanded at the first. The complainant purchased the right to the drawback; but he did not purchase the other right. And I do not see how we can give it to him without making a contract for the parties.

The argument for the complainant goes upon the ground, that he purchased the right to the duties should they be restored by the government for any cause. But that is not the case made by the bill. He only purchased a right to the duties in case they should be restored as a drawback on exporting the goods.

There is no allegation that the defendant did any act which deprived the complainant of the right to the drawback. On the contrary, the allegation is, that the right was lost to the complainant immediately on the making and publication of the decision of the secretary that the goods were free from duty. And such was evidently the necessary consequence of the decision. The right of drawback was at an end, whether the defendant received the money which the government offered to refund, or not. And the decision that such goods were free, would of course reduce their market value by about the amount which had before been charged for duties.

There is a further difficulty in the case. The bill contains no allegation that the complainant, at the time the secretary made his decision, intended to, or would have exported the goods, if the duties had not been refunded; nor that he could have sold the property to any one else for the purpose of exportation; nor that the goods then bore a higher price in any foreign market than they did in our own. Nor does it appear in

any other way, that the complainant lost any thing of value, by losing the right, which he purchased, to the drawback on exporting the goods. The fall in the market value of the property did not result from the loss of the right of drawback; but was the natural consequence of the decision of the government that the goods were not subject to duties.

I am of opinion that the decree of the court of chancery is right, and should be affirmed.

Decree affirmed.