# Richmond

SOUTHERN BISCUIT COMPANY, INC. V. HOLT S. LLOYD, ETC.

January 8, 1940.

Record No. 2126.

Present, Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

300

*James H. Price, W. M. Blackwell* and *J. Vaughan Gary,* for the appellant.

*Robert E. Scott, Henry C. Riely* and *William H. King,* for the appellee.

SPRATLEY, J., delivered the opinion of the court.

On December 20, 1938, the Southern Biscuit Company, Inc. filed its petition against Holt S. Lloyd, receiver of the Dunlop Mills, for an accounting and recovery of a sum attributable to processing taxes alleged to have been paid by it in the purchase of flour from the Dunlop Mills. Holt S. Lloyd and another were appointed receivers in 1932 by the Law and Equity Court of the city of Richmond in a suit therein pending under the short style of *Warner Moore, Jr., et als.* v. *Warner Moore*, surviving partner, et als. Since that date, the Dunlop Mills have been operated by a receiver or receivers, the sole acting receiver at this time being Holt S. Lloyd.

The Southern Biscuit Company, Inc., is a baker engaged in the business of baking and selling at wholesale cookies, cakes, crackers, etc. Dunlop Mills are engaged in the milling business and as domestic processors of wheat became subject to the provisions of the Agricultural Adjustment Act of May 12, 1933, hereinafter referred to as the A. A. A. 48 Stat. at L. 31, 7 U. S. C. A., section 601, et seq.

Under the provisions of the A. A. A., and regulations promulgated thereunder, processing taxes on the first domestic processing of wheat were fixed at the rate of 30c per bushel of sixty pounds, beginning in July, 1933. These taxes were assessed directly against the processor and collected from the processor until January 6, 1936, on which date the Supreme Court of the United States declared the Agricultural Adjustment Act unconstitutional and void. *United States* v. *Butler*, 297 U. S. 1, 56 S. Ct. 312, 80 L. Ed. 477, 102 A. L. R. 914.

The receivers for the Dunlop Mills, on July 26, 1935, filed a bill in equity, in the District Court of the United States for the Eastern District of Virginia, against the Collector of Internal Revenue, charging that the processing taxes were illegal and praying for an injunction against their collection. A preliminary injunction was granted, subject to the terms that the receivers deposit with the

clerk of that court an amount equal to the amount of the processing taxes payable at that time, and an additional amount each month thereafter to cover such additional taxes as might be assessed.

After the Supreme Court of the United States declared the Agricultural Adjustment Act unconstitutional, an order was entered in the District Court perpetuating the injunction theretofore granted and directing a refund to the receivers of the amounts theretofore deposited by them to secure the payment of the processing taxes. Upon receipt of the refund by the receivers, the Law and Equity Court ordered that the proceeds be placed in the general receivership estate.

During the period for which the processing taxes were assessed against the Dunlop Mills, including the period in which the taxes were impounded by the court, the appellant had purchased large quantities of flour from the appellee millers. The purchases were made under two forms of contract entitled, "Millers' National Federation Uniform Sales Contract," some being under the contract adopted in 1934 and the others under the form adopted in 1935.

The material portion of the 1934 form of contract is as follows:

"The price named in this contract includes all taxes as at the date hereof proclaimed by the Secretary of Agriculture by virtue of authority vested in him by the Agricultural Adjustment Act of the United States. Under said Act it is provided that said taxes may be changed from time to time. It is recognized by the parties hereto that there is a growing tendency on the part of the United States and the separate states to tax grain and grain products, containers and other items used in connection with the manufacturing, processing, blending, sale or distribution thereof. It is, therefore, agreed and understood that if, after the date of this contract, the commodities and/or containers, or other items used in connection with the manufacturing, processing, blending, sale or distribution thereof, shall become subject to any increase in taxes or to any

new or additional tax or taxes other than those included in the price hereof, (if the seller shall be required by law to collect such increases or additional taxes), then, in that event, said increases or additional taxes shall be added.to the price hereof; and correspondingly if any tax included in the price hereof shall be decreased or abated, then, in that event, said decrease of abatement shall be deducted from the price hereof."

The material portion of the 1935 form is as follows:

"The prices named in this contract include the processing taxes as now imposed by the United States on the processing of the commodities used in the manufacture of the products covered by this contract and the containers therefor, excepting millfeed containers, pursuant to the Agricultural Adjustment Act now in effect, but do not include any increase in such taxes which may become effective after the date of this contract, or any taxes hereafter imposed on the sale or distribution of the products covered by this contract, or the commodities used in the manufacture thereof, or containers therefor, or any similar tax, charge or imposition hereafter levied or imposed by or pursuant to any state legislation; and if any increase in the processing taxes as now imposed shall become effective, or any other such tax shall be imposed, while any portion of the commodities covered by this contract remain unshipped the amount thereof shall be paid by the Buyer in addition to the contract prices herein specified, provided that no such increase in the processing tax imposed by the United States on wheat shall be added to the price of feeds for feeding livestock.

"If any such tax, charge or imposition or increase thereof shall be measured per bushel of grain, the amount of the tax to be added to the price of any product produced from such grain shall be computed according to the conversion factor established for such product by the Secretary of Agriculture.

"Any decrease in the processing taxes as now or hereafter imposed by any legislative or administrative branch

of the United States shall inure to the benefit of the Buyer, if as and when the benefit of such decrease has been actually realized and secured by the Seller, and shall be credited against the contract prices named in this contract to the extent—and only to the extent, that the grain used in the manufacure of the product covered by this contract is milled after the decrease in the processing taxes takes effect, and to the extent that the Seller is thereby definitely relieved from the processing tax; provided that no such decrease shall be credited on the prices of feeds for feeding livestock."

It was stipulated between the parties (1) That, "under all contracts for the purchase of flour" by the appellant from the appellee, "the flour was delivered and the purchase price paid;" and (2) that "the purchase price specified in each contract was a single stated sum per barrel, with no specification in figures showing how such stated sum was arrived at."

Thus all of the sales had been fully executed, the flour delivered and paid for.

The petition alleged that under these contracts, "any decrease or abatement in the processing taxes imposed or caused by any legislative or administrative branches of the United States, would inure to the benefit of the buyer, your petitioner, if as and when the benefit of such increase was actually realized and secured by the seller, the Dunlop Mills;" that the refund directed by the District Court of the United States gave to the Dunlop Mills the benefit of an abatement, and entitled the petitioner to a refund of the amount of the taxes paid by it; that, in bringing the proceedings to the District Court of the United States, the receivers were acting as agents for and in behalf of the appellant; that the receivers were acting as trustees for the petitioner or as agents for the United States in collecting the processing taxes from the appellant; and that the payment of the processing taxes to the receivers by the appellant was under a mutual mistake and misapprehension as to the rights of both parties.

The appellee filed his demurrer to the petition of the appellant. For the grounds of the demurrer, it set forth:— (1) That the contracts provided a recovery only in the event that the processing taxes were decreased or abated by legislative or administrative authority, and not in the event that the taxes were held illegal by judicial action; (2) that, in addition, the contracts provided for recovery only in the event that the taxes were decreased or abated prior to payment of the purchase price or prior to the milling of the flour; (3) that the averments of the petition did not show that the contracts relied upon were made under a mutual mistake and misapprehension of the rights of the parties; and (4) that there was no segregation of the processing taxes from the price of the goods, in that the tax was levied against the seller and not against the purchaser and was "buried in the price" of the goods, the price charged for the flour being an indivisible and composite total price.

The trial court sustained the demurrer and dismissed the petition, hence this appeal.

The facts are undisputed. The sole question is one of law. That question is: Do the terms of the written contracts give to the appellant a right of recovery?

Every phase of this question has been considered by a number of state and federal courts under facts and circumstances almost identical with those presented here. The answer in every instance where these particular contracts have been involved has been in the negative. We have not been cited to any case from an appellate court holding otherwise.

In the construction and interpretation of the two contracts, we find the right of the appellant to a recovery based solely upon the happening of certain contingencies therein set out.

In the preface to the section relating to taxes in the 1934 contract, it is said:

"Under said Act, it is provided that said taxes may be changed from time to time. It is recognized by the parties hereto that there is a growing tendency on the part of the

United States and the separate states to tax grain and grain products, containers and other items used in connection with the manufacturing, processing, blending, sale or distribution thereof. It is, therefore, agreed and understood that, if, after the date of this contract, * * * any tax included in the price hereof shall be decreased or abated, then, in that event said decrease or abatement shall be deducted from the price hereof."

■ The language quoted shows a recognition by the parties of a possible change in the tax by the taxing authority. It undoubtedly refers to changes made by that authority.

One section of the A. A. A., as amended, authorized the Secretary of Agriculture to increase or decrease the processing tax within the limits prescribed. 7 U. S. C. A., section 609. Another section authorized the Secretary of the Treasury to abate or refund any processing tax under prescribed limitations. 7 U. S. C. A., section 615(a).

■ Courts could not increase or decrease the tax, while Congress or the taxing authority could increase, decrease, or abate it. The word "abatement," therefore, ought not to be separated from the context, but must be considered in the connection in which it is used rather than in relation to some authority not mentioned. The contingencies, therefore, provided by the Act are limited to action by legislative or administrative authority. There is no provision for a contingency resulting from judicial action declaring the Act unconstitutional.

■ The 1935 form of contract uses the following form of language:

"Any decrease in the processing taxes as now or hereafter imposed by any legislative or administrative branch of the United States shall inure to the benefit of the Buyer, if as and when the benefit of such decrease has been actually realized and secured by the Seller, and shall be credited against the contract prices named in this contract to the extent—and only to the extent, that the grain used in the manufacture of the product covered by this contract is milled after the decrease in the processing taxes takes effect,

and to the extent that the Seller is thereby definitely relieved from the processing tax; * * *."

It is to be noted that only the word "decrease" is there used. There is no mention of a refund in the event that the A. A. A. should be held unconstitutional. The language specifically refers to a decrease effected by legislative or administrative authority. A decrease could not be effected by the courts.

In the case of *Johnson* v. *Iglehart Bros., Inc.* (C. C. A. 7th), 95 F. (2d) 4, 8, certiorari denied, 304 U. S. 585, 58 S. Ct. 1058, 82 L. Ed. 1546, rehearing denied, 305 U. S. 670, 59 S. Ct. 59, 83 L. Ed. 434, the facts confronting the Circuit Court of Appeals were exactly similar to those involved in the present case. In that case, a wholesaler sought to recover from a processor an amount equivalent to processing taxes which had been originally "passed on" to the wholesaler as part of the price charged for flour. The tax had been later refunded to the processor by the Federal Government after the A. A. A. had been declared invalid. The court held that the 1934 contract provided that a decrease or abatement in the amount of the tax should inure to the buyer's benefit only when effected as provided by the terms of the A. A. A. itself. The court said:

"It will also be noted that the words used in the contracts are 'increase', 'reduce', 'decrease', and 'abate', which indicate to our mind that the parties intended to protect themselves against the contingencies provided for in the Act and not against the contingency which resulted when the Act was declared unconstitutional."

In *G. S. Johnson Co.* v. *N. Sauer Milling Co.,* 148 Kan. 861, 868, 84 P. (2d) 934, 939, a purchaser sought to recover from a processor of wheat an amount equivalent to the processing taxes, which had been included in the purchase price of flour sold under the 1934 contract, the processing taxes having been, at the time of the purchaser's action, refunded by the Federal Government to the processor. In denying the right of recovery, the court said:

"The contract did not provide for a credit or refund to the buyer in the event that the tax was held illegal. This contingency was not in the contract. It is not contended that there was fraud or mutual mistake and no valid reason has been suggested why the agreement should not be enforced as written."

The cases of *Leidenheimer Baking Co.* v. *Enns Milling Co.*, 148 Kan. 737, 84 P. (2d) 940, and *Johnson* v. *Scott County Milling Co.*, 21 F. Supp. 847, involved the same questions and the same holding.

In *Crete Mills* v. *Smith Baking Co.* (1939) (Neb.), 286 N. W. 333, the court denied the buyer a right of recovery, holding that under the 1934 form of contract the duty of the seller to the buyer to refund an amount equal to processing taxes included in the price charged arose only when the taxes had been decreased or abated by legislative or administrative authority.

The case of *O'Connor-Bills, Inc.* v. *Washburn Crosby Co.* (D. C. W. D. Mo.), 20 F. Supp. 460, 462, presented the same questions as the instant case and involved the interpretation of the 1935 form of contract. The court said: "The agreement did not * * * provide for a credit or refund in the event the tax was held illegal."

*Moundridge Milling Co.* v. *Cream of Wheat Corp.* (1939) (C. C. A. 10th), 105 F. (2d) 366, 370, deals with a consideration of each of two contracts, the 1934 form and the 1935 form. There the buyer brought an action against the processor to recover an amount attributable to processing taxes, which amount had been embraced in the price paid by the buyer on two separate sales of middlings. One of the sales was under the 1934 form of "Millers' National Federation Uniform Sales Contract," and the other sale was under the 1935 form of that contract. The Circuit Court of Appeals, in reversing the District Court, denied relief to the buyer under both contracts. It held that no right of recovery existed except where the abatement of the processing tax came about as a result of the action of the taxing authority. The court said:

"Had the parties intended to provide that the Milling Company, in the event the act should be declared unconstitutional, should refund to the Wheat Corporation that part of the purchase price paid for middlings theretofore delivered which represented the amount of processing taxes from which the Milling Company was relieved by the act being adjudged unconstitutional, it is reasonable to assume they would have used apt language to cover that contingency. * * * We are of the opinion that the parties intended to protect themselves against the contingencies provided for in the act and with respect to middlings delivered after their occurrence, and not against the contingency which resulted when the act was declared unconstitutional."

■ The tax clause in the contracts in question applied only to sales executory in their nature and which had not been completely executed at the time of any increase, decrease or abatement of the processing tax. *Johnson* v. *Iglehart Bros., Inc., supra; O'Connor-Bills, Inc.* v. *Washburn Crosby Co., supra; Johnson* v. *Scott County Milling Co., supra.*

■ ■ The appellant further contends that it is entitled to recover on an implied contract, one "outside of contract provisions." There is no merit in this contention. It has been well settled by repeated decisions of this court that an express contract defining the rights of the parties necessarily precludes the existence of an implied contract of a different nature containing the same subject matter. The rights of the parties are to be determined by the provisions of the express contract, and the law will not imply an agreement in contravention thereof. *Grice* v. *Todd,* 120 Va. 481, 91 S. E. 609, L. R. A. 1917D, 512; *Ellis and Meyers Lumber Co.* v. *Hubbard,* 123 Va. 481, 96 S. E. 754; *County of Campbell* v. *Howard,* 133 Va. 19, 112 S. E. 876.

The same question was raised in *Johnson* v. *Iglehart Bros., Inc., supra.* The court, there citing numerous authorities, said:

"It seems clear to us that the law is well settled that where parties expressly contract, under what circumstances

an obligation may arise with reference to a certain subject-matter, where the same is entered into without fraud or mutual mistake, it excludes the possibility of an implied covenant of a contradictory or different nature. In the instant case, the alleged implied covenant, of course, is not contradictory to those expressly made, but it certainly is different and in addition thereto. There is no claim of fraud or mutual mistake; the parties were dealing at arms' length and so far as is shown, there was no effort or intention on the part of either to prevent the other from incorporating any provision necessary for the protection of the contracting parties. If the parties had desired or intended to provide for the contingency here presented, they could and, no doubt, would have done so. *Generalia specialibus non derogant."*

Other cases holding to the same effect are: *Crete Mills* v. *Smith Baking Co., supra; Johnson* v. *Scott County Milling Co., supra; G. S. Johnson Co.* v. *N. Sauer Milling Co., supra; Golding Bros. Co., Inc.* v. *Dumaine,* (C. C. A. 1st), 93 F. (2d) 162, 115 A. L. R. 664, certiorari denied, 303 U. S. 660, 58 S. Ct. 764, 82 L. Ed. 1118; *Moore* v. *Des Arts,* 1 N. Y. 359, 362.

 This is not a case of the buyer putting the seller in funds to pay a tax; but it is a case in which the tax is a part of a composite price to be paid for the product in any event. The stipulation shows that here there was only a single stated price,—the price per unit of goods—that is, a barrel of flour. That price included the processing tax as was recited in the contract. There was no segregation of the tax nor any statement of the amount of it,

In *O'Connor-Bills, Inc.* v. *Washburn Crosby Co., supra; Johnson* v. *Scott County Milling Co., supra; G. S. Johnson Co.* v. *N. Sauer Milling Co., supra;* and *Golding Bros. Co., Inc.* v. *Dumaine, supra,* the courts, in each instance, held that the taxes were included as a part of the price of the flour and, therefore, were "buried in the price."

In the 1934 form of contract, it is stated: "The price named in this contract includes all taxes." In the 1935

contract, we find the following: "The price named in this contract includes the processing taxes."

Other cases construing like or similar questions holding to the same effect are: *Zinsmaster Baking Co.* v. *Commander Milling Co.*, 200 Minn. 128, 273 N. W. 673; *Cupples Co., Manufacturers* v. *Mooney*, (Mo. App.), 25 S. W. (2d) 125; *Texas Co.* v. *Harold*, 228 Ala. 350, 153 So. 442, 92 A. L. R. 523.

The appellant, in support of its contention that this is a case where the buyer has put the seller in funds with which to pay a tax, cites a number of cases including *Wayne County Produce Co.* v. *Duffy-Mott Co., Inc.*, 244 N. Y. 351, 155 N. E. 669; *Kerber Straw Hat Corp.* v. *Lincoln et al.*, 266 N. Y. 410, 195 N. E. 130; and *Brown* v. *Salter*, 59 Ga. App. 579, 1 S. E. (2d) 468. In none of these cases was the item of the tax included in the composite price to be paid for the product. In each of these cases there was an agreement between the parties with reference to the tax, which agreement was separate and apart from the contract price of the goods sold.

In *Wayne County Produce Co.* v. *Duffy-Mott Co., Inc.*, *supra*, the court recognized the distinction between a situation where the buyer puts the seller in funds to pay a tax and where the tax is "buried in the price". That court said:

"This is not a case where the item of the tax is absorbed in a total or composite price to be paid at all events. In such a case the buyer is without remedy, though the annulment of the tax may increase the profit to the seller. *Moore* v. *Des Arts*, 1 N. Y. 359. This is a case where the promise of the buyer is to pay a stated price, and to put the seller in funds for the payment of a tax besides * * *."

The case of *Casey Jones, Inc.* v. *Texas Textile Mills, Inc.* (C. C. A. 5th), 87 F. (2d) 454, recognized the same distinction and referred to similar cases.

All of the cases cited by the appellant are clearly distinguishable in that they present instances where the buyer had agreed to pay a fixed, stated price and also a tax, or

where a composite price was charged and paid pursuant to a contract which expressly provided that, in the happening of certain contingencies, the portion of the price attributable to the tax should be refunded to the buyer. The refund in the latter instance, however, has always been held wholly dependent upon the happening of the contingencies provided.

The appellant does not press its contention that it is entitled to recovery on the theory of a mutual mistake. There is nothing to show that there was any mutual mistake of fact between the parties. The allegation in the appellant's petition is merely a conclusion of the pleader.

The contract is not ambiguous because it left out something that appellant might have wanted in it. If there was any mistake, it was one of law. The appellant has voluntarily paid money with a full knowledge of all the facts and circumstances. If it was paid under a mistaken belief that there was a valid imposition of taxes, it cannot recover. The facts of this case do not bring it within any of the exceptions which make a mistake at law remedial. *Mayor of Richmond* v. *Judah*, 5 Leigh (32 Va.) 305; *Commonwealth of Virginia* v. *Conner et als.*, 162 Va. 406, 174 S. E. 862, and cases heretofore cited construing the contracts in question.

The appellant is in error in alleging in its petition that the taxes were paid by it. The taxes were levied against the processor and paid by the processor. The processor was not an agent of the government, nor of the purchaser of its products, in the collection of the tax.

It is to be further noted that the appellant does not allege in its petition that it absorbed the processing tax to its own loss. In the absence of a pleading to that effect, it is not an unreasonable assumption that whatever amount was included in the contract price as a processing tax was passed on to those with whom the buyer dealt. *Johnson* v. *Iglehart Bros., supra; G. S. Johnson Co.* v. *N. Sauer Milling Co., supra.*

The case did not proceed far enough to disclose whether the appellee had been made subject to the so-called "Windfall Tax Act," 26 U. S. C. A., section 345, and had paid such tax.

Thus, on equitable grounds, the appellant is no more entitled to the refunded processing tax than the appellee, nor can it be said that the appellee has been enriched at the expense of the appellant.

The demurrer, tested in accordance with the foregoing principles, should have been sustained. The decree of the trial court is affirmed.

*Affirmed.*

HUDGINS, J., dissenting.