**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 06-1591**

———————

DRC, INCORPORATED,

Plaintiff - Appellee,

and

DRC INTERNATIONAL, LLC; ROBERT J. ISAKSON;
ALBERT J. ISAKSON; ROBERT J. ISAKSON, II,

Plaintiffs,

versus

CUSTER BATTLES, LLC,

Defendant - Appellant,

and

SCOTT CUSTER; JOSEPH T. MORRIS; MICHAEL J.
BATTLES; MURTAZA LAKHANI; MOHAMMED ISSAM ABU
DARWISH; SECURE GLOBAL DISTRIBUTION; MID EAST
LEASING, INCORPORATED; CUSTER BATTLES LAVANT;
JOHN & JANE DOE A-Z; AMERICAN-IRAQI
CONSTRUCTION SOLUTIONS, LLC; WILLIAM "PETE"
BALDWIN; SOLUTIONS GROUP INTERNATIONAL, LLC;
LARU, LIMITED,

Defendants.

———————

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.  T. S. Ellis, III, District
Judge.  (1:04-cv-01499-TSE)

Argued:  March 14, 2007                    Decided:  May 16, 2007

Before WILKINSON, GREGORY, and DUNCAN, Circuit Judges.

Affirmed in part and remanded by unpublished opinion.  Judge Gregory wrote the opinion, in which Judge Wilkinson and Judge Duncan joined.

**ARGUED:** Rochelle B. Raposo, Fall River, Massachusetts, for Appellant.   Michael Earl Barnsback, DIMUROGINSBERG, P.C., Alexandria, Virginia, for Appellee.   Bernard J. DiMuro, DIMUROGINSBERG, P.C., Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

Custer Battles, LLC, appeals the award a jury granted to DRC, Inc., in its dispute with Custer over a broken business arrangement. Custer claims that the jury lacked sufficient evidence to award DRC $968,892 in quantum meruit and $370,761 for tortious interference with contract. At oral argument, DRC conceded that the jury awarded a double recovery in the amount of $130,000. Because sufficient evidence supports the jury's findings, we affirm the district court's denial of Custer's post-judgment motions but remand so that the district court may adjust the judgment to reflect a remittitur in the amount of $130,000.

I.

In June 2003, Custer was in the process of securing a contract from the Coalition Provisional Authority ("CPA") in Iraq to provide security for the Baghdad International Airport ("BIA"), which was to re-open in July. To make their successful bid, Custer arranged with DRC near the end of June to construct a permanent camp at the airport and to recruit former British Army Gurkhas to constitute the security force. Although both Custer and DRC considered their relationship a contractual one, there was no written document memorializing their agreement.

Because the BIA was scheduled to open around July 10 or 17, 2003, Custer needed to have the Gurkhas at the airport and to

3

provide housing for them before then. DRC arrived in Iraq on June 30 and began constructing a permanent camp where the Custer personnel and the Gurkhas were to live for the year of Custer's contract with the CPA. DRC realized that Custer's personnel were living in a local hotel and acknowledged that it could not finish the permanent camp before the Gurkhas arrived, so it transformed the empty Terminal C of the BIA into a temporary camp. To accomplish this transformation, DRC cleaned the terminal, converted rooms into bunkrooms, renovated the bathrooms to include showers, installed air conditioning units, re-established the electricity and water supplies, and improved the kitchen and dining facilities. DRC assigned one of its managers to maintain the temporary camp while it was inhabited. During this time, DRC hired local laborers and subcontractors to work on the permanent camp.

In the beginning of July, DRC completed its obligation to hire a security force for the BIA. DRC hired Albert Isakson, the brother of DRC's founder, Robert Isakson, to travel to Nepal to recruit Gurkhas. Albert arrived in Nepal on July 4, interviewed candidates, had fifty-four of them sign contracts with DRC, and paid for their flights to Iraq, where they all arrived by July 10. DRC understood the Gurkhas to be employed by DRC and leased to Custer. Custer trained and supervised the Gurkhas in their role as the security force for the BIA.

DRC claimed that it completed construction of the permanent camp on July 29. Custer expressed dissatisfaction with the timing of the completion, the quality of the work done, and the quality of the living conditions at the temporary camp, among other things, and fired DRC as its subcontractor on July 30. Custer then took complete charge of the Gurkha security force and required them to sign new contracts. DRC subsequently filed a complaint against Custer in the Eastern District of Virginia.

During the October 2005 trial, DRC claimed that Custer breached its contract with DRC to lease the temporary and permanent camps from DRC. Custer argued that its contract with DRC was instead a "turnkey" contract for DRC to provide life support for Custer's personnel for one year at a fixed price. DRC also argued that Custer had tortiously interfered with its contracts with the Gurkhas. In its complaint, DRC asserted claims against Custer for breach of contract, open account, quantum meruit, conversion, false imprisonment, battery, tortious interference with contract, statutory conspiracy to interfere with business relations, and several other actions at common law. Custer counter-claimed that DRC had breached its contract with Custer, misappropriated trade secrets, tortiously interfered with contracts and business expectancies, breached its covenant of good faith and fair dealing, and committed fraud.

5

After several days of testimony, the district court allowed the jury to return verdicts on only six claims. The jury found that Custer had breached a contract but awarded DRC no damages. It found that DRC had not breached a contract with Custer and awarded DRC $130,430 for its claim of open account. It found an implied contract between DRC and Custer and awarded DRC $969,892 in quantum meruit damages for the value of the work it did on the camps. Finally, it found that Custer had tortiously interfered with DRC's contracts with the Gurkhas and awarded DRC $370,761.

After the jury returned its verdict, Custer filed a motion under Federal Rule of Civil Procedure 50 for a judgment as a matter of law and, in the alternative, for a new trial under Rule 59. In its motion, Custer claimed that the jury had no legally sufficient basis to award damages for the quantum meruit and tortious interference claims. The district court denied the motion, finding that sufficient evidence existed to support both awards and that the awards were not against the weight of the evidence. Custer appeals the district court's denial of its motion but does not appeal the open account verdict.


II.

We review a district court's denial of a motion for judgment as a matter of law de novo. Bryte v. Am. Household, Inc., 429 F.2d 469, 475 (4th Cir. 2005). We consider the evidence in the light

6

most favorable to the non-moving party.  <u>Id.</u>  A trial court may only grant a motion under Rule 50 if after a full  hearing by a jury, "the court finds that a reasonable jury would not have a legally evidentiary basis to find for the party on that  issue." Fed. R. Civ. P. 50; <u>Price v. City of Charlotte</u>, 93 F.3d 1241, 1250 (4th Cir. 1996).  The district court should "accord the utmost respect to jury verdicts and tread gingerly in reviewing them." <u>Price</u>, 93 F.3d at 1250.

### III.

### A.

Under Virginia law, which governs this diversity action, plaintiffs may recover in quantum meruit reasonable compensation for the value of services they provide under a contract implied in law.  <u>Po River Water & Sewer Co. v. Indian Acres Club of Thornburg, Inc.</u>, 495 S.E.2d 478, 482 (Va. 1998).  Plaintiffs bear the "burden of proving with reasonable certainty the amount of damages and the cause from which they resulted."  <u>Carr v. Citizens Bank & Trust Co.</u>, 325 S.E.2d 86, 90 (Va. 1985).  The Supreme Court of Virginia warns that "speculation and conjecture cannot form the basis of recovery."  <u>Id.</u>

Custer claims that the district court erred in upholding the jury's award of $969,892 for the reasonable value of the services DRC provided under its implied contract to build and maintain the

7

temporary and permanent camps for Custer. According to Custer, DRC did not prove with reasonable certainty the amount of money it expended or the value of the services it provided in constructing and maintaining the temporary camp. Custer also points out that the life-support services DRC provided were not worth the "occupancy" and catering charges of $100 and $35 per day per person, respectively, DRC claimed to the jury. Custer states: "The conditions of the camp were inhumane, described as 'substandard' and posed threats to the physical and mental health of the guards that had to endure its conditions and actually caused the men to be physically sick." Appellants' Br. 16. Custer finally argues that DRC should not be able to recover damages in quantum meruit for the services it provided in constructing the permanent camp because the jury found that a contract to construct the camp existed, and a quantum meruit verdict can only stand if the jury finds no extant contract.[1]

Despite Custer's claims, the district court did not err in upholding the jury's award of damages in quantum meruit. Although the jury found that Custer breached an actual contract that it had with DRC, the general verdict form did not specify which contract the jury found breached. In its order dismissing Custer's post-

---

[1]See S. Biscuit Co. v. Lloyd, 6 S.E.2d 601, 606 (Va. 1940) ("An express contract defining the rights of the parties necessarily precludes the existence of an implied contract of a different nature containing the same subject matter.")

8

judgment motions, the district court noted that it is likely that the jury understood the breached contract as a contract between DRC and Custer concerning the Gurkhas and not the construction of the two camps. The district court stated that by finding for DRC on its quantum meruit claim, the jury must have concluded that no contract concerning the construction and maintenance of the camps existed. We agree with the district court's conclusion. The evidence presented at trial would have allowed a reasonable jury to conclude that DRC and Custer did not come to a meeting of the minds on the terms of the construction and maintenance contract but that DRC deserved to be compensated for the work it did pursuant to its understanding that it had contracted with Custer. Without detailed findings from the jury, we will not overturn the verdict on the basis of Custer's speculation that the jury determined that a specific contract existed.

We further find that a reasonable jury could have concluded that DRC proved the reasonable value of its services under this implied contract with reasonable certainty. Both sides presented a great deal of evidence about the amount of money each paid in the camp construction process. DRC offered invoices and spreadsheets detailing its expenditures. Custer offered the testimony of an accounting expert who studied the documents and opined that DRC did not expend as much money as it claimed. On cross-examination, however, Custer's expert admitted that he only counted the payments

that had sufficient documentation and conceded that DRC might have paid more money. DRC also presented evidence that it provided services at both camps that Custer's expert did not take into account.

Both sides presented evidence about the conditions at the camp. Custer's witnesses said that the work DRC did and the services DRC provided were sub-par. They complained about the quality of the food, they pointed out that the bathrooms had standing water, and they stated that the camp was not clean. DRC's witnesses praised the cleanliness and ingenuity of the camp. They admitted that the bathrooms had a drainage problem, but they claimed to have provided a proper solution. They stated that they served only four or five days worth of pre-prepared food and that the remaining meals they cooked at the camp. The overhead and labor charges DRC presented during testimony might have been more than Custer thought they were worth, but a reasonable jury could have credited DRC's estimates over the protestations of Custer's witnesses. This Court will not overturn the credibility determinations of the jury.

DRC also presented considerable evidence of the expenses it incurred in constructing both camps. Custer did little to rebut DRC's claims of payments to its own subcontractors and Iraqi labor force. DRC even admitted where the jury's verdict overshot the evidence. Because it could find no evidence to support the entire

10

amount that the jury awarded, DRC at oral argument conceded that the jury must have counted $130,000 twice in its calculation of the award. Excluding that $130,000, we find sufficiently specific evidence to support the jury's award of damages for DRC's quantum meruit claim.

B.

Custer gives three reasons why the district court should not have upheld the jury's tortious interference with contract verdict. First, Custer claims that DRC's contract with the Gurkhas was void because it violated the statute of frauds. Custer next argues that it could not have tortiously interfered with DRC's Gurkha contract because DRC was acting as Custer's agent in procuring the Gurkhas. Finally, Custer states that the evidence was insufficient to prove that Custer tortiously interfered with DRC's relationship with the Gurkhas. We reject these arguments.

Custer claims that DRC's contracts with the Gurkhas were for a term longer than a year and were not in writing. Virginia's statute of frauds requires a contract "that is not to be performed within a year" to be in writing and signed by the parties. Va. Code Ann. § 11-2(8) (West 2006). DRC responds that the employment contracts were indeed in writing and that Custer has waived its statute of frauds defense by presenting it for the first time on appeal.

11

We will not consider an issue raised for the first time on appeal "unless the refusal to consider it would result in a fundamental miscarriage of justice." U.S. Dep't of Labor v. Wolf Run Mining Co., 452 F.3d 275, 283 (4th Cir. 2006). Custer should have raised a defense based on the statute of frauds in its original answer and counter-claim, but it did not. It could have raised this defense in its post-judgment Rule 50 motion, but it did not. According to the docket sheet, both sides participated in extensive post-trial briefing of issues, and Custer never raised this defense. Because it does not result in a fundamental miscarriage of justice, we refuse to consider this defense raised at such a late stage in the proceedings.[2]

Custer next claims that the district court should have disregarded the jury's verdict in favor of DRC on the tortious interference claim because DRC acted as an agent for Custer in securing the services of the Gurkhas. DRC replies that it was an independent contractor that formed its own contracts with the Gurkhas, whom it then leased to Custer. By finding for DRC on the tortious interference claim, the jury necessarily found that Custer

---

[2]Assuming, arguendo, that Custer has not waived its statue of frauds defense, the defense still fails. DRC presented evidence, both documentary and testimonial, that it had executed written and signed employment contracts with the Gurkhas. DRC witnesses testified that they lost those contracts when Custer forced them to leave the BIA. Custer presented no evidence that supports their current claim that DRC's employment contracts with the Gurkhas were never in writing. Given this evidence, were we to consider the statute of frauds defense, we would reject it.

12

was neither a party to the contract nor DRC's principal in an agency relationship.

The district court instructed the jury that it could not find that Custer tortiously interfered with DRC's contracts with the Gurkhas if it found that DRC was acting as an agent for Custer when it recruited them. Following the law established by this Court, the district court further instructed:

> Where a party is part of a business relationship and therefore acting within the scope of its own financial interests, it's not an intermeddler and there is no claim for tortious interference. Where the party is not a competitor seeking an advantage, but rather a party to the relationship acting in its own economic interests to limit liability, there is no claim for tortious interference.

J.A. 616; see Zoby v. Am. Fid. Co., 242 F.2d 76, 79-80 (4th Cir. 1957). Neither party objected to these instructions. The touchstone for the difference between agents and independent contractors in Virginia law is the concept of control. An independent contractor is "one who undertakes to produce a given result without being in any way controlled as to the method by which he attains the result." Craig v. Doyle, 19 S.E.2d 675, 677 (Va. 1942).

The evidence presented at trial showed that Custer asked DRC to recruit the Gurkhas who would provide security for the BIA. DRC had complete control over this process. It hired its own recruiter, paid for the agency and travel expenses, interviewed and

13

signed contracts with the Gurkhas, and supervised the Gurkhas when they were not working security details for Custer. DRC also presented evidence that it agreed with Custer to lease the Gurkhas to Custer at cost plus a thirty percent fee. Also in evidence was an email from Scott Custer, the co-owner of Custer Battles, that shows that DRC was indeed in control of recruitment and hiring of the Gurkhas:

> I am not sure how you want to handle the Gurkhas, as I know we had originally talked about you providing them at cost. However, the best way to run the Gurkhas is likely as a true subcontract, either with a firm fixed price or cost+ arrangement. I will let you decide, however as a subcontractor you will be expected to invoice use for costs.

J.A. 150. This evidence tends to show that DRC was not acting as an agent under Custer's control but as an independent contractor. It also supports a reasonable jury's finding that DRC had executed individual employment contracts with the Gurkhas to which Custer was not a party.

Custer finally claims that the evidence presented at trial was insufficient to prove that Custer interfered with DRC's contracts with the Gurkhas. DRC, however, presented unrebutted evidence that after Custer fired DRC and forced its personnel to leave the BIA, DRC had no opportunity for further contact with the Gurkhas, and Custer made the Gurkhas sign employment contracts with Custer so that they could continue to provide security. Because Custer thus

14

prevented DRC from maintaining its employment relationship with the Gurkhas, we affirm the jury's award of $370,761 for lost profits.

IV.

We hold that sufficient evidence supports the jury verdicts in favor of DRC on its quantum meruit and tortious interference with contract claims. We therefore affirm the district court's denial of Custer's post-judgment motion. Because, however, the jury appears to have awarded DRC $130,000 in double recovery for the quantum meruit claim, we grant a remittitur in that amount and remand to the district court to modify the judgment accordingly.

AFFIRMED IN PART AND REMANDED

15