COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Ortiz and Causey
Argued at Lexington, Virginia

UNPUBLISHED

VIRGINIA UNIVERSITY OF LYNCHBURG, INC.

MEMORANDUM OPINION[*] BY
v.      Record No. 0361-22-3          JUDGE DANIEL E. ORTIZ
FEBRUARY 28, 2023

ROBERT FLOOD

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
Michael R. Doucette, Judge

F.E. "Tripp" Isenhour, III (Caskie & Frost, on brief), for appellant.

Melvin L. Hill for appellee.

To sustain a claim for quantum meruit, a plaintiff must present sufficient evidence of his damages. Virginia University of Lynchburg, Inc. ("VUL") appeals the denial of its motion to strike Robert Flood's quantum meruit claim. VUL contends that the circuit court erred in denying its motion to strike because: Flood failed to present evidence on the reasonable value of his services, Flood's express employment contract precludes the imposition of an implied contract, and Flood's claim is time barred. Because Flood did not introduce any evidence regarding the value of his services to support a claim for quantum meruit, we reverse.

BACKGROUND

In 2012, Robert Flood was hired as VUL's Director of Resident Life and Housing and signed a written employment agreement. Under this contract, the Housing Director was an "at

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

will" position, for an indefinite period, and had a base salary of $30,000.[1] Flood's employment was terminated on June 6, 2016.

The parties dispute the nature of Flood's employment. Flood contends that he worked many different tasks in addition to his position at VUL, including overseeing residential halls, assisting with the fast-track summer school program, monitoring the cafeteria, assisting with miscellaneous maintenance during summers, and coaching basketball, often working more than 40 hours per week. VUL, through the testimony of its president, Kathy Franklin, disputed this description in its entirety. President Franklin testified that Flood did not perform the duties he alleged, that Flood was reassigned to the athletic department after only one month of employment, and that Flood worked no more than 40 hours per week.

Flood filed a complaint in the Lynchburg Circuit Court, alleging that VUL violated minimum wage and maximum hour law, and also sought recovery in quantum meruit. VUL removed the matter to the United States District Court for the Western District of Virginia and moved to dismiss. Upon Flood's admission that the Fair Labor Standards Act was inapplicable, the case was remanded to the Lynchburg Circuit Court. The circuit court dismissed Flood's minimum wage and maximum hour claims but moved forward with quantum meruit. The only damages remaining in the complaint were Flood's request for $75,000, the calculation for which was not explained.

After Flood's case in chief, VUL moved to strike the evidence and declined to present its own evidence at that time. The trial judge took the motion to strike under advisement and

---

[1] The employment contract called for a $45,000 annual salary. But the number "45" was struck, and the number "30" was written below. "R.R." and "R.F."—i.e., then-president Ralph Reavis and Robert Flood—initialed this change. On or about the same day, and on the same letterhead, Dr. Reavis sent Flood a letter welcoming him to the VUL staff. The letter indicated that Dr. Reavis would personally pay Flood $15,000 in addition to his $30,000 annual salary.

subsequently overruled it. The court allowed VUL 30 days to inform the court of its intent to present a case in chief and reconvened in December 2021 to hear the remaining evidence.

At the conclusion of evidence, the circuit court awarded Flood $53,184.48 in quantum meruit damages. The court calculated these damages based on Flood's employment contract:

> A standard workweek is 40 hours. Flood testified that with his additional tasks, his average workweek at VUL was 60 hours or 50% more than a standard workweek. His request for damages is 50% more than the $30,000 he was receiving as Housing Director. Such a damages request has a rational basis in fact, and I find it to be reasonable.

The court determined that Flood had already received $6,815.52 towards his quantum meruit damages, based on payments outside of his salary made between 2012 and 2016. The court deducted this amount from the $60,000 presumed damages, to yield a final award of $53,184.48. This appeal followed.

ANALYSIS

Although VUL raises three grounds for appeal, "[t]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Commonwealth v. Swann*, 290 Va. 194, 196 (2015) (quoting *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010)). Because we conclude that Flood presented no evidence regarding the reasonable value of his services rendered outside of his duties under the existing employment contract, we reverse without addressing the remaining issues.

I. Standard of review

When considering a motion to strike, "a trial court must review the evidence in the light most favorable to the nonmoving party," and the "same standard applies to our review of the trial court's decision on the motion to strike." *Kiddell v. Labowitz*, 284 Va. 611, 629 (2012). When the trial court has denied a motion to strike, the appellate court must determine whether "it is conclusively apparent that [the] plaintiff has proven no cause of action against [the] defendant."

- 3 -

*Blue Ridge Serv. Corp. v. Saxon Shoes, Inc.*, 271 Va. 206, 218 (2006). If there is insufficient evidence to support the cause of action, the trial court should be reversed. *Id.* at 219.

II. The circuit court erred in denying VUL's motion to strike because Flood failed to present evidence on the reasonable value of his services.

Quantum meruit recovery is based on an implied contract to pay the reasonable value of services rendered. *Mongold v. Woods*, 278 Va. 196, 203 (2009). Quantum meruit is available where "service is performed by one, at the instance and request of another, and . . . nothing is said between the parties as to compensation for such service." *Id.* In such cases, "the law implies a contract, that the party who performs the service shall be paid a reasonable compensation therefor." *Id.* To establish a claim for quantum meruit, the claimant must satisfy three elements: (1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; and (3) acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value. *Nossen v. Hoy*, 750 F. Supp. 740, 744 (E.D. Va. 1990) (elements of quantum meruit); *see also James G. Davis Constr. Corp. v. FTJ, Inc.*, 298 Va. 582, 597 (2020) (elements of unjust enrichment).[2]

Quantum meruit damages are the "reasonable value of the work performed, less the compensation actually received for that work." *T. Musgrove Constr. Co. v. Young*, 298 Va. 480, 485 (2020). A plaintiff has the burden of providing with "reasonable certainty" the "amount of damages and the cause from which they resulted; speculation and conjecture cannot form the basis of the recovery." *Suntrust Bank v. Farrar*, 277 Va. 546, 554 (2019). "Damages cannot be recovered if derived from uncertainties, contingencies, or speculation." *Id.*

---

[2] Although the "measure of damages is . . . not necessarily the same," the elements of unjust enrichment and quantum meruit are otherwise identical. *See T. Musgrove Constr. Co. v. Young*, 298 Va. 480, 486 (2020).

A. Flood did not present evidence as to his hourly rate, annual rate, or any indicia as to how his damages should be calculated.

VUL contends that Flood presented no evidence concerning the value of his services and, therefore, the circuit court had no basis to assign value to the work claimed by Flood. Flood relies on the opinion letter issued by the circuit court to prove there was sufficient evidence regarding the value of his services rendered. The opinion letter denying VUL's motion to strike stated that Flood's damage request of $60,000[3] has a "rational basis in fact" based on Flood's testimony that "his average workweek at VUL was 60 hours or 50% more than a standard workweek" of 40 hours a week. The $60,000 damages break down to $15,000 per calendar year of employment,[4] which is 50% of his annual salary, for working 50% more than the average 40-hour work week. The court also assessed payments Flood received during his employment in addition to his contracted salary[5] and subtracted it from his requested damages. The court determined Flood had already been paid an additional $6,815.52. It deducted the $6,815.52 from the $60,000 request, amounting to $53,184.48 in damages.

---

[3] Flood's complaint indicated a request of $60,000 for the two counts that were struck and requested $75,000 of damages for his quantum meruit claim. However, the circuit court bases its calculation for the quantum meruit damages on Flood's "$60,000 request."

[4] Two of Flood's employment years were not full years. He began work for VUL on August 6, 2012, and was terminated on June 6, 2016. Although the trial judge made an award based on four whole years of employment, the record indicated Flood was only employed for three years and ten months.

[5] The court deducted $6,815.52 from the requested damages, finding that Flood received the following payments in excess of his contracted salary:

- In 2012, Flood was paid $11,977.30 for work beginning in August. But he was only due $11,220—an overpayment of $757.30.
- In 2013, Flood was paid $31,500.98—an overpayment of $1,500.98.
- In 2014, Flood was paid $30,800.98—an overpayment of $800.98.
- In 2015, Flood was paid $31,833.82—an overpayment of $1,833.82.
- In 2016, Flood was paid 14,882.44 for 43.2% of the year. But he was only due $12, 960—an overpayment of $1,922.44.

Flood testified on his own behalf but called no other witnesses to testify about the value of his services outside of his role as Housing Director. Throughout his testimony, Flood never discussed his hourly rate or annual rate, nor gave any other indicia of how his damages should be calculated. Flood presented no evidence regarding the reasonable value or hourly rate for a basketball coach, maintenance worker, or summer school coordinator—all tasks that Flood supposedly performed. The only evidence presented to quantify Flood's damages was his initial employment contract. However, this contract was for a position in the housing department, and all the other work falls squarely outside this position.

B. The circuit court cannot rely on Flood's employment contract with VUL to assess his damages.

The court cannot use the employment agreement to evaluate Flood's damages because the existence of an express contract defining the rights of the parties "necessarily precludes the existence of an implied contract of a different nature containing the same subject matter." *Southern Biscuit Co. v. Lloyd*, 174 Va. 299, 311 (1940). If an express contract exists and defines the rights of the parties, the parties' rights must "be determined by the provisions of the express contract, and the law will not imply an agreement in contravention thereof." *Id.* In order to prevail on his quantum meruit theory Flood must establish the additional work completed was outside the terms of his original agreement. In fact, Flood concedes this point in his brief.[6]

Using Flood's hourly rate under his Housing Director contract to calculate his lost compensation for tasks unrelated to housing work constitutes mere speculation. This cannot form the basis of Flood's damages, as "speculation and conjecture cannot form the basis of the recovery" in a quantum meruit action. *Suntrust Bank*, 277 Va. at 554. The court cannot assume,

---

[6] "[T]he additional duties Appellee performed (Cafeteria Monitor, men's basketball coach, women's basketball coach, running the VUL summer school for scholastically under-achieving athletes, and painting on the campus grounds) were not related to his contractually mandated duties as Housing Director."

without supporting evidence, that the reasonable value of a coach's work is the same as the reasonable value of work by a housing director, maintenance worker, cafeteria monitor, or summer school teacher.

Although the Supreme Court of Virginia has previously determined quantum meruit damages using an hourly employment contract rate, the facts of that case are distinguishable from the present case. *Mongold*, 278 Va. at 204-05. In *Mongold*, the parties had an informal oral agreement, under which the employee (Woods) would perform farm work for the employer (Dove) for 35 to 40 hours per week, for $7,850. *Id.* at 200. When haying season began, Woods' workload doubled to well over the 40 contracted hours per week. *Id.* at 200, 204-05. Dove was unable to compensate Woods for the extra hours worked and made oral promises to "take care" of Woods. *Id.* at 200. Woods' employment by the Doves continued for 21 years, during which Dove made oral promises to Woods to "turn over the chicken houses" to Woods, so that he could "earn a living from them." *Id.* Woods, in reliance on Dove's assurances, performed extra work beyond his compensated salary. *Id.* This additional work included tending to sheep and cattle, shearing sheep, gardening, landscaping, cleaning, building a shed, repairing a fence, and other miscellaneous tasks around the Doves' property. *Id.* Based on Wood's discussions with Dove, he believed that he was going to inherit the farm upon the death of the Doves. *Id.* at 201. When Paul Dove and his wife, Nina Dove, passed away, Woods was not mentioned in their will. *Id.* Woods then sought damages for his uncompensated labor. *Id.* at 203. The court applied Woods' contractual hourly rate to calculate the damages for his unpaid labor, as the extra work was identical to Woods' contract work. *Id.* at 206. By contrast, here, Flood's alleged extra work is not identical to his contract work. Flood alleges that he worked as a cafeteria monitor, coach, summer school coordinator, and maintenance worker, in addition to his contracted position as a housing director. These jobs contain unique tasks, require different skill sets, and would be

likely compensated at different rates than a housing director.  Thus, the court cannot apply

Flood's hourly housing director rate to his work under these different roles.  Using Flood's

housing director hourly rate would be "mere speculation," since no evidence was introduced to

support why this rate would be applicable to Flood's other types of work.

C.  Flood failed to present adequate evidence with respect to how many hours were dedicated to each of his other work projects.

Flood presented no evidence concerning the number of hours that he dedicated to each

job outside of his role as Housing Director.  During his testimony, Flood could not provide a

clear answer regarding how many hours he worked per week.  He testified that he worked 40

hours per week, then 80 hours, then "sometimes fifty," and finally settled on 60 hours per week.

Flood's testimony was inconsistent, and he offered no supporting evidence or documents to show

how many overtime hours were spent on each task.  Because the record contains no evidence

suggesting that all of Flood's work should be valued at the *same* hourly rate, it is critical to

ascertain how long Flood worked each job, to determine his damages.  Damages "cannot be

recovered if derived from uncertainties, contingencies, or speculation."  *Suntrust Bank*, 277 Va.

at 554.

Because Flood failed to adduce *any* evidence concerning the measure and quanta of his

damages, or even to show how many hours per week that he worked in each position (or even

how many *total* hours he worked *during each week* of his nearly four-year period), the circuit

court erred in refusing to strike Flood's evidence.

CONCLUSION

The circuit court erred in denying VUL's motion to strike because Flood failed to provide

evidence regarding the reasonable value of his services rendered outside of his duties under the

existing employment contract.  Accordingly, we reverse the circuit court's decision and enter final judgment for VUL.

*Reversed and final judgment.*